HODGES et al. v. KIMBALL et al.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1899.)

No. 278.

1. ADMINISTRATORS—SUITS IN OTHER STATES.

The domiciliary administrators of a decedent cannot be considered strangers to a suit brought in behalf of the estate in another state, as they must be accounted with for any recovery therein, though the suit should be brought by another as ancillary administrator appointed in such state, and their receipt would be a good acquittance to the defendant.

2. PARTIES — RIGHT OF ADMINISTRATOR TO SUE — SUIT UNDER STATUTE OF ANOTHER STATE.

The fact that a right of action for wrongful death is given to the administrator of the decedent by a state statute does not limit such right of action to an administrator appointed in that state.

3. SAME—SUIT BY ADMINISTRATOR IN ANOTHER STATE—FAILURE TO TAKE OUT ANCILLARY LETTERS.

The objection that an executor or administrator suing in another state has failed to qualify by taking out ancillary letters in such state is formal and technical, and the defect is cured by the taking out of such letters at any time before the hearing.

4. SAME—OBJECTION TO CAPACITY OF PLAINTIFF TO SUE—WAIVER.

A plea to the merits, of the general issue, in a suit brought by an administrator, admits the representative capacity of the plaintiff, and his right to institute and maintain the suit.

5. AMENDMENTS OF PLEADINGS—PRACTICE OF FEDERAL COURTS.

Where it is in accordance with the practice of the state, a federal court should permit amendments of pleadings in actions at law in furtherance of justice.

6. PARTIES — INCAPACITY OF PLAINTIFFS TO SUE — FAILURE TO MAKE TIMELY OBJECTION—PERMITTING AMENDMENT.

The domiciliary administrators of a decedent commenced an action in a federal court in another state without having qualified themselves to maintain such suit by taking out ancillary letters of administration in that state. The defendant, however, appeared and pleaded to the merits without raising any question of plaintiffs' disability to sue, and the case was twice continued. *Held* that, after the lapse of such a length of time that a new action would be barred by limitation, it was error to permit the defendant to interpose such objection, and to deny plaintiffs the right to amend by showing that, since the suit was commenced, they had taken out ancillary letters of administration in the state, and were qualified to maintain the suit.

7. REVIEW ON ERROR—ORDER DENYING LEAVE TO AMEND PLEADINGS.

Where a ruling denying leave to amend a declaration necessarily results in the dismissal of the suit, such ruling is subject to review on appeal or writ of error from the judgment of dismissal.

In Error to the Circuit Court of the United States for the Western District of Virginia.

The plaintiffs in error instituted their suit in the circuit court of the United States for the Western district of Virginia to recover of the defendants damages occasioned by the death of their intestate in the state of Virginia while in the employ of the defendants. The suit was instituted on the 30th day of August, 1895. At the October term of that year the defendants appeared, and filed a special demurrer to the declaration, alleging the failure to show adverse citizenship in the plaintiffs, and, the demurrer being sustained, the plaintiffs were allowed to amend their declaration, averring that the plaintiff administrators were residents of the state of Tennessee; and thereupon defendants pleaded not guilty, and upon which plea issue was joined by the defendants. At the May term, 1896, the case was, by consent, and at the defendants' costs, continued; and at the October term, 1896, a further continuance was had, but at whose instance it does not appear. On the 20th of May, 1897, the defendants presented a special plea, averring that the plaintiff administrators had never qualified as such in the state of Virginia, and that one J. W. Mort was the Virginia administrator then, and when the suit was instituted. To the filing of this plea, plaintiffs excepted; but the court allowed the same to be filed, and gave the plaintiffs 90 days within which to file their replication. On the 7th day of July, 1897, said replication was filed, setting forth, in substance, that, at the institution of the suit, plaintiffs had not qualified in the state of Virginia, but in the state of Tennessee, intestate's domicile, and that at said time they were the only personal representatives of the decedent; that it was true that, subsequent to the bringing of the suit, said J. W. Mort had qualified in the state of Virginia as administrator, but that he had resigned as such; and that they had duly taken out ancillary letters of administration in Virginia on said estate, and were the only representatives of Samuel L. Lusk, deceased. And they asked leave to amend their declaration, showing their qualification in the state of Virginia. Upon this state of the pleadings, and upon the demurrer of the defendants to the replication of the plaintiffs to plea No. 2 so filed on July 7, 1897, and upon defendants' objection to plaintiffs' motion to amend their declaration, showing the taking out of ancillary letters of administration by them in the state of Virginia, the case was on the said 7th day of July, 1897, submitted to the lower court, and the same taken under advisement; and on the 13th day of May, 1898, the decision complained of, dismissing plaintiffs' suit, was rendered.

Robert Burrow (Isaac Harr, on brief), for plaintiffs in error.

R. M. Page and J. I. Hurt, for defendants in error.

Before GOFF, Circuit Judge, and WADDILL, District Judge.

WADDILL, District Judge (after stating the facts as above). The learned judge of the lower court (87 Fed. 545) apparently proceeded upon the theory that, plaintiffs not having taken out letters of administration upon the estate of their intestate in the state of Virginia at the time of the institution of the suit, the same could not be maintained, that the defect could not be cured by amendment, and that plaintiffs, not having qualified in the state at that time, occupied the relation of mere strangers to the litigation. The fact that an administrator, in the absence of a statute, cannot maintain a suit in the courts of a state, other than the one in which he qualified, when the disability is properly and seasonably pleaded, is too well settled to admit of serious controversy. But the question whether, in a suit brought by the domiciliary representatives of a decedent in a state in which they have failed to take out ancillary letters of administration, and where defendants have appeared and pleaded the general

issue without raising any question as to the plaintiffs' disability to sue, such defendants should, 18 months thereafter, and when the plea of the statute of limitations would apply to the claim sued on, be then allowed to interpose such a defense, and plaintiffs denied the right by amendment to show the subsequent qualification and the right to maintain the suit, is another and a very different thing. It was virtually conceded in argument that in an equity suit an amendment showing the subsequent taking out of letters of administration could be made, and the suit maintained, but it was strenuously insisted that a different rule existed in the courts of law. Just what good reason there is for allowing the amendment in equity, and not at law, does not seem apparent; and certainly in a case like the present one, where great injustice would be wrought, unless there is some overpowering consideration, such a result as would follow ought not to be brought about. We do not think that plaintiffs, although laboring under the disability of not having qualified within the state of Virginia at the time of the institution of the suit, occupy the position of strangers, or persons having no interest in the litigation. They were the domiciliary representatives, and as such given the right to qualify over others in this state, and to be accounted with for the amount of recovery, had another administrator qualified. Andrews v. Avory, 14 Grat. 229, 240, 241; Stevens v. Gaylord, 11 Mass. 256; Swatzel v. Arnold, Woolw. 385, Fed. Cas. No. 13,682. They had an interest in the subject-matter of the litigation, and a perfect right to sue in the state of Tennessee for the same cause of action, could jurisdiction, as against defendants, have been acquired (Railroad Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905; Nelson v. Railroad Co., 88 Va. 971, 14 S. E. 838); and their receipt in settlement of the claim in controversy to the defendants would have been an acquittance from all liability.

It was insisted in argument, and with great ingenuity, that, while this would be true with ordinary choses in action due the decedent in his lifetime, a different rule existed as to claims of this character arising under a statute, in which decedent had no then interest, and that only the representative of the state in which the cause of action arose could deal with claims of this kind. This does not seem to be the correct view, though counsel for defendants presented it with great force and ability. The supreme court of the United States, in the comparatively recent case of Dennick v. Railroad Co., 103 U. S. 11, virtually disposes of this contention. In that case the plaintiff's intestate met his death in the state of New Jersey, and the qualification upon his estate was had in the state of New York, and the suit instituted in the latter state to recover damages caused by the negligent killing of deceased, under a statute of New Jersey which is strikingly like the Virginia statute. Mr. Justice Miller, speaking for the supreme court, says:

"It is difficult to understand how the nature of the remedy, or the jurisdiction of the courts to enforce it, is in any manner dependent on the question whether it is a statutory right or a common-law right. Whenever, by either the common law or the statute law of a state, a right of action has become fixed, and a legal liability incurred, that liability may be enforced, and the right of action pursued, in any court which has jurisdiction of such

matters, and can obtain jurisdiction of the parties. * * * But it is said that, conceding that the statute of the state of New Jersey established the liability of the defendant, and gave a remedy, the right of action is limited to a personal representative appointed in that state, and amenable to its jurisdiction. The statute does not say so in terms. 'Every such action shall be brought by and in the name of the personal representatives of such deceased person.' * * * The plaintiff is, then, the only personal representative of the deceased in existence, and the construction thus given the statute is that such a suit shall not be brought by her. This is the direct contradiction of the words of the statute. The advocates of this view interpolate into the statute what is not there, by holding that the personal representative must be one residing in the state, or appointed by its authority. The statute says that the amount recovered shall be for the exclusive benefit of the widow and next of kin. Why not add here, also, by construction, 'if they reside in the state of New Jersey?' It is obvious that nothing in the language of the statute requires such a construction. Indeed, by inference it is opposed to it. The first section makes the liability of the corporation or person absolute where the death arises from their negligence. Who shall say it depends on the appointment of an administrator within the state?"

The plea to the merits of the general issue in this case unquestionably admitted the representative capacity of the plaintiffs, and their right to institute and maintain the suit. Society for the Propagation of the Gospel v. Town of Pawlet, 4 Pet. 480; Pullman v. Upton, 96 U. S. 328; Wise v. Getty, 3 Cranch, C. C. 292, Fed. Cas. No. 17,909; Hughes v. Clayton, 3 Call, 554; Wms. Ex'rs (7th Eng. Ed.) 1887–88. And the doctrine of the earlier cases in the supreme court would have been conclusive of the present controversy, as the plaintiffs' disability to sue could only have been raised by plea in abatement, which, under the Virginia statute (Code Va. § 3260, as amended Feb. 1, 1898), could not be filed after the defendants had demurred, pleaded in bar, or answered to the declaration or bill, nor after a decree nisi, or conditional judgment, at rules. In other words, such plea should have been filed on the first rule day after the filing of the declaration and the return of process executed, and could not thereafter have been entertained. In the case of Noonan v. Bradley, 9 Wall. 394, the court allowed the defense to be made by a special plea in bar, filed with the plea to the merits; three of the members of the court (Justices Clifford, Swayne, and Davis) dissenting on the ground that the alleged disability to sue should have been raised by plea in abatement, and that the rule of pleading established in the federal courts by the cases of Childress v. Emory, 8 Wheat. 642, Ventress v. Smith, 10 Pet. 161, and Kane v. Paul, 14 Pet. 33, ought not to be departed from. In this case, while the court decided that a defendant was not required to make the defense necessarily by plea in abatement, and that it could be made by plea in bar, it by no means follows that such a plea would be allowed under all circumstances, and at any stage of the case; and we doubt exceedingly whether it would have been received in a case where its filing had been delayed, after a plea of the general issue, for such a period that the statute of limitations would apply to the claim in the event of the defense raised by it being successful. Indeed, it may be seriously questioned whether such plea would have been entertained at all in a Virginia case, where by statute matters of abatement can only be taken advantage of by plea filed at the first rule day after declaration and return of process executed. Where

the state statute allows an amendment at any stage of a case as a matter of right, the federal court will not exercise the discretion to deny the right. Nussbaum v. Insurance Co., 40 Fed. 337. In allowing amendments to conform to the proof, the federal courts will follow a state statute defining a material variance. Insurance Co. v. Gunther, 116 U. S. 113, 6 Sup. Ct. 306. A state statute allowing amendments introducing new causes of action, and the state decisions as to what does or does not constitute a new cause of action, will be followed. Chamberlain v. Mensing, 51 Fed. 511; West v. Smith, 101 U. S. 263. Furthermore, it may be said of the case of Noonan v. Bradley that it is unlike the case at bar in a most essential particular, —in this: that the title of the foreign administrator to the claim sued on was disputed expressly; there being at the time of suit a local representative within the state of Wisconsin, in whom the claim sought to be recovered by the New York administrator vested. The case was in this respect much like the more recent case of Insurance Co. v. Lewis, 97 U. S. 682, 686, where the same question was considered, as to whether the defense raising the right of an administrator to sue should not be made by plea in abatement, and was waived by answer to the merits. Mr. Justice Harlan, speaking for the unanimous court, said:

"But it is further contended that the answer, which relied upon these objections to the action, was in the nature of a plea in abatement, and that such objections were, according to established rules of practice in the federal courts, waived when the company answered to the merits without first having the court dispose of the issue as to Lewis' right to maintain the action. This position is, however, wholly untenable. The defense, so far as it impeached the authority of Lewis, by virtue of his appointment as public administrator, to collect the amount, if any, due on the policy, was in bar, not in abatement, of the action. The defense, if true, did not question his capacity as such administrator to perform any of the duties imposed upon him by law. It only insisted that he, as such lawfully appointed administrator, had no cause of action against the company upon the alleged contract of insurance."

This language would seem to imply that the court thought the defense affecting the administrator's right to sue should have been by plea in abatement, as the learned justice was careful to make clear that the question was not one affecting the administrator's right to perform any duty imposed upon him by law, but that he, though lawfully appointed, had no cause of action against the defendant. In this last case, the public administrator of the state of Missouri, by false representations, having been appointed administrator upon the estate of a citizen of Wisconsin, was attempting to collect an insurance policy due his decedent's estate by a Maine insurance company, the court decided that he had no right to the policy sued on; that the deceased never lived in Missouri, never had any estate there, and lived and died in the state of Wisconsin, leaving the insurance policy sued on among his property in the last-named state; and that the same belonged to the administrator there; in a word, he was attempting to collect an asset in the hands of another lawfully appointed representative, and that never could have come into his hands. Whatever may be said of the right to file the plea in bar, however, certain it is, the fact that, if driven to a new action, the plaintiffs' claim will

be barred by the statute of limitations, is a strong reason for not entertaining the plea, on the one hand, and, if allowed, for affording the plaintiffs an opportunity to amend their declaration; and such a course, we feel, should be adopted, unless in violation of some well-known principle or rule of law. Schieffelin v. Whipple, 10 Wis. 81; Thornton v. Herring, 5 Houst. 154; Miller v. Watson, 6 Wend. 506. "The impediment to the exercise of the full powers of an administrator in a jurisdiction foreign to that granting his letters is essentially technical and formal, and should not be strained beyond its necessary application." Mr. Justice Miller (sitting on circuit) Swatzel v. Arnold, Woolw. 383, Fed. Cas. No. 13,682, supra. In this case the same learned justice decided that a foreign administrator could sue in the courts of another state before taking out letters of administration therein, and, upon taking out ancillary letters of administration, might by amendment show the fact. He said:

"In order to establish the position that this matter could not be shown by amendment, the alleged incapacity of the plaintiff must be so radical that the defendants could not waive it, but whenever, in the progress of the cause, it came to the notice of the court, it would dismiss the suit. This is not the case. The objection is to the character of the parties, and had it not been taken by demurrer or plea, but a general answer had been filed, it would have been considered waived. See 39th rule in equity. The case would have proceeded without regard to the objection. This is apparent from one or two considerations. It is well settled that a voluntary payment to an administrator of the domicile by a foreign debtor is a good acquittance to such foreign debtor. * * * This could not be done, if the administrator's authority, for all purposes, is confined to his jurisdiction."

And to the same effect is the case of Giddings' Ex'rs v. Green, 4 Hughes, 446, 449, 48 Fed. 489, decided by his honor, Judge Hughes, some years ago, in this circuit.

Chancellor Kent, in the case of Doolittle v. Lewis, 7 Johns. Ch. 49, thus treats the question of the failure of an executor or administrator to qualify before instituting suit:

"If the party sues as executor or administrator, without probate or taking out letters of administration, the taking them out at any time before the hearing will cure the defect, and relate back so as to make the bill good from the beginning. In a light so merely formal is that omission viewed."

And in this connection it may be said that:

"In many states * * * a subsequent grant of letters of administration relates back, and renders valid all acts within the scope of a rightful executor's or administrator's authority, and which were in their nature beneficial to the estate, or at least such as their parties had no reason to complain of." 7 Am. & Eng. Enc. Law, 193, 194.

The statutes of most of the states are exceedingly liberal in the matter of amendment of pleadings, and the state of Virginia is not an exception to the rule; and the federal statute on the subject (section 954, Rev. St.) is very broad in its terms, and, like the Virginia statute, was manifestly intended, as far as possible, to prevent a miscarriage of justice on purely technical grounds. The courts, federal and state, have had all phases of the question of the amendment of pleadings frequently before them; and it may be said that the decisions generally are favorable to a liberal construction of the statutes

authorizing amendments, and to prevent the operation of mere technicalities tending to defeat the ends of justice.

In Maddox v. Thorn, 8 C. C. A. 574, 60 Fed. 220, an amendment, to show adverse citizenship between the parties, was allowed after judgment; such amendment, as it was said in that case, being one of "vital substance."

In Chapman v. Barney, 129 U. S. 677, 9 Sup. Ct. 426, the suit was originally brought in the name of the "U. S. Express Co.," alleged to have been organized under the laws of the state of New York, against Henry B. Chapman. At the succeeding term of the court, upon plaintiff's motion, leave was given it to file an amended declaration, and to change the action from assumpsit to trover. The plaintiff changed the declaration to make it, in lieu of the original, read, "Ashbel H. Barney, President of the U. S. Express Co.," a joint-stock company, etc., which is authorized by the laws of the state of New York to maintain and bring suits in the name of its president, etc., against said H. B. Chapman, etc. Upon an appeal to the supreme court, the first error assigned was that "the court erred in permitting a new sole plaintiff to be substituted for and in the place of the sole original plaintiff." The court said:

"We do not think the first assignment of error is well taken. Amendments are discretionary with the court below, and not reviewable by this court."

In McAleer v. Clay Co., 38 Fed. 709, a foreign administrator brought an action at law in the federal court in Iowa, without having taken out ancillary letters of administration. The question of his right to sue being raised, he took out such letters, and amended his declaration to show that fact; and, upon a motion being made to strike out such amendment, it was denied, the court saying:

"It cannot be questioned that, under the liberal provisions of the Code of Iowa, the supreme court of Iowa has sustained changes in the parties plaintiff and other amendments which in principle would seem to justify the court in holding in the present case that the action could be maintained."

In the case of Wells v. Stomback, 13 N. W. 340, referred to, the supreme court of Iowa said:

"We are asked whether the plaintiff, having commenced the suit in the name of Washington township, could amend the petition, making the clerk plaintiff. In Township of West Bend v. Munch, 52 Iowa, 132, 2 N. W. 1047, it was held that a township did not have the legal capacity to sue. This being so, it is claimed there was no plaintiff named in the original petition, and therefore none could be substituted; that an amended petition could not be filed, because there was nothing to amend. But we think, where there is an appearance to the action, and the defendant tests the right of the named plaintiff to maintain the action by a demurrer, and the latter is sustained, the names of the proper parties plaintiff may be substituted in the action by an amended petition. * * * The defendants could make their defense in this action as well as in the new one, and they could not have been prejudicially affected by the amendment. The right to make it, we think, existed."

In Buel v. Transfer Co., 45 Mo. 563, the mother of a minor instituted suit to recover damages for personal injuries to her child, and 18 months thereafter Samuel F. Buel was introduced as a co-plaintiff by

amendment of the petition. The statute of limitations having accrued before the filing of said amendment, the court said:

"Where the amendment sets up no new matter or claim, but is a mere variation of the allegations affecting a demand already in issue, then the amendment relates to the commencement of the suit, and the run .ing of the statute is arrested at that point." ·

In Lilly v. Tobbein, 15 S. W. 618, the supreme court of the state of Missouri held that where an association, incompetent to sue, brought an action in the name of the association, an amendment should be allowed substituting certain of its members as plaintiffs, and that it introduced no new cause of action, and related back to the commencement of the suit, for the purpose of preventing the bar of the statute of limitations.

In Hines v. Rutherford, 67 Ga. 606, a suit having been instituted by one as heir at law, an amendment was allowed making it a suit by him as executor; and the amendment was held to relate back to the original suit, and not to be barred, as the original was not barred.

In Henry v. Roe, 83 Tex. 446, 18 S. W. 806, the plaintiff, having qualified as executor in the state of New Jersey, instituted suit in the courts of Texas, and was allowed subsequently to amend his declaration, showing that he had taken out ancillary letters of administration in the last-named state.

In Smith v. Peckham, 39 Wis. 414, a suit was instituted by a foreign administrator before filing letters of administration within the state as required by the laws of the state; and the court held the pleading could be amended, showing such fact, and the suit proceeded with.

In Insurance Co. v. Ludwig, 108 Ill. 514, a suit was instituted by the assignee of a life insurance policy, instead of by the administrator of the estate of the insured. Subsequently, and at a time at which the right to institute an action to recover under the policy had elapsed, an amendment was allowed, substituting the name of the administrator, who qualified subsequent to the institution of the original suit, for that of the assignee of the policy, and a new count was added, setting out the cause of action in his name. The court held that the amendment related back to the commencement of the suit, and that the statute of limitations could not be invoked to defeat the action; that the substitution of the party having the legal right to sue, instead of one improperly named as plaintiff, was in no sense the commencement of a new suit; and that, so far as the defendant was concerned, the suit would be regarded as commenced at the time of the original issuance and service of process.

In Railroad Co. v. Cox, 145 U. S. 593, 604, 12 Sup. Ct. 905, in an action to recover damages arising from the loss of plaintiff's intestate's life while attempting to couple cars, "by the defective condition of the cross-ties and of the roadbed," an amendment was allowed averring that the injury occurred, also, "on account of the drawhead and coupling pin not being suitable for the purposes for which they were used"; and this was permitted, notwithstanding the fact that the limitation of one year had passed. The court stated that it was not disposed, by technical construction, to hold that the second count alleged another and different negligence from the first.

In Smith v. Railway Co., 5 C. C. A. 557, 56 Fed. 458, in an action to recover damages for the loss of life of plaintiff's intestate, alleged to have occurred entirely by reason of the employment knowingly of an incompetent engineer, the United States circuit court of appeals for the Eighth circuit, after the statute of limitations had accrued, allowed an amendment averring that the engineer was negligent, and that he and the deceased were not fellow servants.

The defendants in error insist, in the face of these authorities, that the law is with them, and that judgment of affirmance should be entered, for the reasons—First, that the state decisions referred to are the result of local statutes of the states in which they were rendered; second, that in the cases not so controlled, where amendments of the kind here contended for were allowed, the persons in whose behalf the amendments were made actually had the right to maintain the suit at the time of its institution improperly in the name of another; and, third, that the question of amendments of pleadings being one within the discretion of the trial court, its action on that account is not subject to review here. We are not prepared to admit the correctness of either of these contentions. While it is true some of the decisions quoted are affected more or less by state statutes, they were not so to any considerable extent, and in scarcely any of the states were the statutes on the subject more liberal than those in the state of Virginia, where, even as against a defendant, if a suit is brought in the wrong name, it may, within one year from the determination of this fact, be reinstituted in the right name, the time lost by the wrong suit not to be counted in the running of the statutes of limitations. Code Va. § 2934, as amended by Act Feb. 8, 1898. Conceding that the plaintiffs do not occupy the position of strangers, or of persons having no interest in, or anything to do with, the decedent's estate (as was the case of Person v. Casualty Co., 84 Fed. 760, relied on by defendants in error), and that they were the real, beneficial owners of the claim in suit, entitled to sue for it themselves in the state of Tennessee, and to be accounted with for the amount of the recovery, had another administrator qualified, and with the right, over all others, to take out ancillary letters of administration in the state of Virginia, then, we think this case undistinguishable from the cases of Chapman v. Barney, 129 U. S. 677, 9 Sup. Ct. 426; McAleer v. Clay Co., 38 Fed. 709; Wells v. Stomback (Iowa) 13 N. W. 339; and Insurance Co. v. Ludwig, 108 Ill. 514; and certainly the right of amendment is strongly sustained by courts of last resort in at least five of the states of the Union, and the federal decisions, hereinbefore named. That the right of amendment is one usually within the discretion of the court, from which an appeal will not lie, is not controverted. Still we apprehend that, where the question of the filing of a plea or the making of an amendment involves the final determination of the case, as here, there can be no doubt of the right of appeal. In Chapman v. Barney, supra, the allowance of the amendment simply involved the trial of the case on its merits, and from the final determination of which an appeal could be taken; but, had the right of amendment been denied and the suit dismissed, then the appeal would have been from that final action of the court.

Our conclusion is that, upon the filing of the replication to the plea raising the question of the right of plaintiffs to sue, the amendment asked for by them, showing their qualification as administrators of decedent in this state, should have been allowed, and the case proceeded with on its merits to its final conclusion, and not dismissed, as was done. Therefore the judgment of the court below will be reversed, and the case remanded to that court, with instructions to proceed therein with the trial in accordance with the views herein expressed. Reversed.