BAINUM v. AMERICAN BRIDGE CO. OF NEW YORK.

(Circuit Court, W. D. Pennsylvania. October 23, 1905.)

No. 44.

1. PARTIES—MISNOMER OF DEFENDANT—AMENDMENT.

The plaintiff's statement in an action for personal injury against a foreign corporation, alleged to be a corporation of New Jersey, specifically set out the facts, clearly indentifying the defendant, the work in which it was engaged, and the time and place of the injury. There were in fact two corporations, closely connected and having the same name, except that one was "of New Jersey" and the other "of New York." Both had the same resident agent, on whom the process was served, and the same attorneys, who entered appearance for defendant and prepared the case for trial, when it was discovered that the New York corporation was in fact the one doing the work. *Held*, that the court had power under Rev. St. §§ 948, 954 [U. S. Comp. St. 1901, pp. 695, 696], to permit plaintiff to amend by substituting the name of the real defendant intended, and that such power would be exercised, especially where objection was not made until such time had elapsed as would bar a new action.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Parties, §§ 88–90, 164, 166.]

2. MASTER AND SERVANT—ACTION FOR INJURY TO SERVANT—QUESTION FOR JURY.

The question of the liability of a defendant for an injury to plaintiff, a boy 16 years old in its employ, on the ground that defendant's foreman required him to perform an act which subjected him to a danger which a foreman exercising ordinary prudence would not have subjected him to, *held* one for the jury under the evidence.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 1042.]

At Law. Sur motion for new trial.

Chas. A. Poth and Ward Bonsall, for plaintiff.
Reed, Smith, Shaw & Beal, for defendant.

BUFFINGTON, District Judge. This is a motion for a new trial. On October 11, 1904, the plaintiff, Frank E. Bainum, a minor and citizen of Pennsylvania by his next friend, brought suit in this court for the recovery of damages for personal injuries against the American Bridge Company, averring it was a corporation of the state of New Jersey. In the statement filed with the præcipe, a detailed statement was made of the bridge construction work the defendant was engaged in, the place where it was being done, the employment of the plaintiff by the defendant, the name of the superintendent under whom he worked, and such full particulars as left, or now leave no question as to the identity of the place or manner or circumstances of the alleged injury. The marshal returned the summons as served on "Emil Gerber, authorized agent in Pennsylvania, upon whom service can be made." On November 7th following, Messrs. Reed, Smith, Shaw & Beal, by præcipe filed, entered their appearance "for the American Bridge Company, the defendant above named." The statement and indorsement referred to in the præcipe was simply "The American Bridge Company," without further addition. The

cause was placed upon the trial list and counsel for defendant prepared for its defense, but a short time before trial discovered that the defendant company which had been engaged in the construction work where the accident occurred was not a corporation of the state of New Jersey, but one of the state of New York. In point of fact there was an American Bridge Company chartered by the state of New Jersey, but it was engaged in manufacturing bridges, and the American Bridge Company chartered by the state of New York was engaged in erecting the bridges constructed by such New Jersey company. Both were subsidiary companies of the United States Steel Corporation. The defendant's counsel were employed by both the New York and the New Jersey companies, the casualty work of both companies was in charge of the same person, and the same person was the authorized agent for legal service in Pennsylvania upon both companies.

Under these circumstances, the court regarded the case as one proper for the exercise of that remedial power by way of amendment with which courts are invested in order to effect justice and prevent injustice through mistake. The federal statutes (Rev. St. §§ 948, 954 [U. S. Comp. St. 1901, pp. 695, 696]) are liberal in dealing with amendments. We think discretionary power in that regard was here properly exercised, and the plaintiff allowed to amend by averring an incorporation by New York state, instead of one by New Jersey. There was no question as to the locality of the accident or of the identity of the company engaged in the work or employing the plaintiff. The counsel for that company appeared and prepared its defense, and all parties supposed the real parties to the accident were the parties to the suit. Now, to refuse the beneficient power of amendment, so as to place on record the parties who had all along supposed they were on record, would be shocking to the sense of justice, and especially so when the statute of limitations would bar another suit by the plaintiff. The similarity of names misled counsel for defendant, and the failure of the plaintiff to know that there were two corporations of substantially the same name and engaged in the same general business was quite natural. There was no new cause of action stated, and the fact that the statute of limitations would bar the plaintiff unless the amendment was allowed has been held ground for such allowance. Sanger v. Newton, 134 Mass. 308; Elting v. Dayton, 67 Hun (N. Y.) 425, 22 N. Y. Supp. 154; Risley v. Phœnix Bank, 2 Hun (N. Y.) 349; Dana v. McClure, 39 Vt. 197; Lottman v. Barnett, 62 Mo. 159; Wood v. Lane, 84 Mich. 521, 47 N. W. 1103; Schieffelin v. Whipple, 10 Wis. 81. By permitting this amendment, neither the nature of the case nor the real issue between the real parties is changed, and the federal courts permit amendments in furtherance of justice. Bamberger v. Terry, 103 U. S. 40, 26 L. Ed. 317; Hodges v. Kimball, 91 Fed. 845, 34 C. C. A. 103.

The main complaint now made on the motion for a new trial is that the case was allowed to go to the jury. We think it would have been an unwarranted act on the court's part to itself pass on the issue. Briefly stated, these elements were in the case: The defendant com-

pany had previously done construction work on Brunot's Island, and had left its tools in its office there. At the time of the accident it was doing work at Esplen, on the south side of the Ohio river, opposite the island. A railroad bridge across that stream also crossed over the island, but some 30 feet above the ground. The Dravo Construction Company, which was doing work on the island for the Philadelphia company, the owner of it, built steps from the ground up to the footpath of the bridge. This enabled workmen and other people to reach either shore by way of the bridge. The steps had two landings, were steep, and the upper portion was shaded from the sun's rays. They had one side rail, which was waist high. They were the only means of getting from the bridge to the defendant's tools. The accident occurred November 29th. It was a cold freezing morning. It grew warmer toward noon, but the sun did not reach the upper part of the stairs where this accident occurred. The defendant's work at Esplen was under the exclusive control of Mr. Riddle, its foreman, who had full power to oversee, manage, hire, and discharge. There was evidence of the condition of the steps that morning, that they were icy, and several of the men slipped on them as they came down. Riddle had been up and down them that morning. He was not asked, and gave no testimony, as to their condition. About 11 o'clock it was discovered the work of the whole erection gang would have to stop until certain tools could be obtained from the office on the island. The plaintiff was employed as tool boy. He was 16 years old, and weighed about 130 pounds. It was contended by plaintiff's counsel that, although he had a lot of idle men waiting until the boy's return, the manager, though knowing the condition of the steps, and requiring haste on the boy's part, sent him to bring an unwieldy, burdensome, and dangerous load up steep, icy, unprotected steps, and that, in view of the boy's youth, this unduly subjected him to an unwarranted risk, which resulted in the accident.

The question of the ownership of the bridge and the steps are not in our judgment material. It suffices to say they were private property and were the only path the plaintiff could go to perform his duty. The steps were steep, icy, and protected by a single rail, waist high; a place that required care and caution when in that condition on the part of a man with his hands free to grasp the rail. The boy was sent for several articles. It was hard to conceive of a more unwieldy, unhandy load to carry, and one that was more likely to embarrass one more in case of a fall. Different witness testify as to the different articles—an auger, a carpenter's square, a spirit level, a carpenter's foot adze, and a two-handled cross-cut saw. To these were added the manager's lunch box, which the boy carried on his little finger, and two dozen long wire spikes in his pocket. The boy makes no mention of the auger, which one of the witnesses spoke of, but described his load and the accident as follows:

"Q. State how you carried them. A. Well, I had the nails in my pocket, and I had the foot adze and the spirit level in my right hand, and I had the cross-cut saw and the square over my shoulder in my left hand, and the lunch box in my right hand. Q. Whose lunch box was that? A. Mr. Rid-

dle's, the foreman's. Q. Could you have carried these tools in one hand, so that you could have held to this railing with this other hand? A. No, sir; nor nobody else could. Q. When you got that load you started up the steps? A. Yes, sir. Q. Did anything happen while you were going up the steps before you got up to the first landing? A. No, sir. Those steps, the sun was on them, and it had melted all the snow on them. There wasn't any ice on the first steps going up, but the other steps were shaded by the bridge. Q. Just describe your fall as well as you can. A. Well, I was going up the steps; I got on the landing, and had turned up the second flight of stairs, and I got to the second step, and my foot slipped, and I tried to catch myself, but had I couldn't; I would have to drop the tools if I would; but I slipped and fell before I could think hardly of catching myself, and I hit the landing, and there was no second railing on the landing; there is a top railing, but there is no second railing, and I slipped under that other railing, and fell 27 feet and lit across a log on the ground."

It will thus be seen the boy slipped on the steps, evidently, and slipped down to the landing, which being unprotected save by a waist-high rail, he went under it and fell to the ground. Part of the tools remained on the landing; part fell below. The boy fell across a log, his back was broken, and he is now an inmate of the Home for Incurables. Under the charge of the court, the verdict of the jury must be regarded as establishing the fact that "the boy was required to perform an act which subjected him to a danger which a foreman exercising ordinary prudence would not have subjected the boy to in the line of that employment." When all the circumstances are considered, the age of the boy, the character of the steps, their icy condition, the unwieldiness of the load, the requirement of haste, we certainly cannot say the submission of the case to the jury was error, and we will not say their verdict was unwarranted. The results of the injury were permanent and so grave that we do not feel impelled to set the verdict aside as unduly excessive.

The motion for a new trial is refused.