CLEMMENS v. WASHINGTON PARK STEAMBOAT CO.

(Circuit Court, E. D. Pennsylvania. June 28, 1909.)

No. 89.

PARTIES (§ 95*) — MISNOMER OF DEFENDANT — AMENDMENT OF RECORD AFTER JUDGMENT.

A ferry company, which was a corporation of New Jersey, operated a line of excursion boats from Philadelphia under the assumed name of the "Washington Park Steamboat Company." A passenger to whom it sold a ticket under such name was injured, and brought suit against the steamboat company. The attorney for the ferry company, who was also a director, accepted service for the defendant, and appeared and defended the case on the merits; the trial resulting in a judgment for the plaintiff. Neither plaintiff nor the court was informed of the true facts until after an attempt to collect the judgment failed, and plaintiff moved to amend the record by substituting the name of the ferry company as defendant. *Held*, that such company, which was the real defendant, having in fact appeared and defended the suit, and there being no such person as the defendant named, the court had power to permit such amendment, under Rev. St. §§ 948, 954 (U. S. Comp. St. 1901, pp. 695, 696), authorizing amendments to cure defects of form.

[Ed. Note.—For other cases, see Parties, Cent. Dig. § 164; Dec. Dig. § 95.*]

On Rule to Amend the Record.

See, also, 162 Fed. 815.

Goodman & Mitchell, for plaintiff.

Charles H. Downing, for defendant.

J. B. McPHERSON, District Judge. In May, 1907, the Gloucester Ferry Company, a corporation of New Jersey, owned and operated a line of steamboats that ran between Arch Street wharf in the city of Philadelphia and Washington Park, a place of amusement on the Delaware river. For their own convenience—the exact reason is not important—the ferry company sold tickets between these two points in the name of the "Washington Park Steamboat Company," and the plaintiff bought and used one of these tickets. She was injured in the course of her excursion, and supposing, as was natural, that such right of action as she might possess was against what appeared to be a corporation in control of the line, she brought suit against the "Washington Park Steamboat Company." Of course, if the marshal had been obliged to search for a company by this name, or its officers, it would have speedily appeared that there was no such corporation in existence, and that the suit should have been brought against the ferry company. The discovery at that time, however, that the steamboat company did not exist, was prevented by the action of the ferry company, whose counsel (he is also a member of its board of directors) ac-

cepted service of the summons as "attorney for defendant," and afterwards pleaded the general issue in the same character. He also tried the case, and made a defense both on the merits and also on the ground that, while the ferry company owned and operated the boats, it had no control over the trolley car in the park that was carrying the plaintiff when she was injured. He called the assistant treasurer of the ferry company, who testified as follows:

".Q The boats that run from Arch Street wharf to Washington Park belong to the Gloucester Ferry Company, do they not?

"A. Belong to the Gloucester Ferry Company; yes, sir."

Thereupon this offer was made:

"I offer to prove by the witness that he is the assistant treasurer of the Gloucester Ferry Company; that the Gloucester Ferry Company own the boats that run from Arch Street wharf to the pier of Washington Park; that they pay the Washington Park Amusement Company or some one else, for the privilege of landing there, so much a passenger; that they have no control whatever over these trolley cars, and no power over them whatever; that when they land passengers at the pier; that that is Washington Park—the pier is Washington Park."

The witness testified in support of this offer, and upon cross-examination answered further as follows:

"Q. You are connected with the Gloucester Ferry Company?

"A. Yes, sir.

"Q. That is what you are talking about?

"A. That is what I am talking about.

"Q. We are suing the Washington Park Steamboat Company.

"A. The Washington Park Steamboat Company and the Gloucester Ferry Company are one.

"Q. They are the same?

"A. They are the same.

"Q. They own the boats, do they not?

"A. They own the boats; yes, sir.

"Q. You say the Washington Park Steamboat Company and the Gloucester Ferry Company are the same?

"A. Are the same identical one."

This ambiguous testimony was understood by the court to mean that the ferry company and the steamboat company were owned and controlled by the same persons, as will appear by the following quotation from the charge:

"It has also been testified that the Gloucester Ferry Company, which it has been said by one of the witnesses owned these boats, was the same thing as the Washington Park Steamboat Company; that they were identical, and, as I understand the effect of the witness' testimony to be, they were owned and controlled by the same people, so that under different names they were the same persons. What was the case with regard to this railroad? Was that also operated and controlled by the defendant company, the Washington Park Steamboat Company? Because, if it was, as matter of course it would be responsible for any negligence of its employés in the operation of that railroad. If it were not, if it were a different corporation, or if it were owned and operated by different persons—I am speaking now of an individual as distinguished from a corporation—there would be then a plain distinction between the defendant company and this other person or corporation, and in that event the defendant company would not be responsible."

This apparent mistake of the court certainly afforded the ferry company another opportunity to correct the error into which both

the plaintiff and the court had fallen. It was the ferry company's plain duty to explain then, if it had not been its duty before, that the steamboat company was a mere name, and was not a corporation at all. But, instead of so doing, the ferry company continued its policy of implying that the suit had been brought against a real person, and not against a mere shadow, as will clearly appear by the following colloquy that took place at the conclusion of the charge:

"Counsel for Ferry Co.: Will your honor give me an exception to that part of your charge wherein you said if these were two or three corporations controlled by the same parties—

"The Court: I did not say that at all. I said distinctly to the jury, and I will say it again, so as to make it plain, that unless the defendant company controlled and operated this mile of road, it would not be responsible. That is what I said.

"Counsel for Ferry Co.: It does not matter who were the owners.

"The Court: If the defendant company controlled and operated this road, of course, it makes no difference who owns it. I will say in plain terms, as I have said, it makes no difference who owned it. The question is: Who controlled it, and who operated it? Who ran these cars? Who were responsible for what is said to have been the negligence of these motormen? Of course, the person who would be responsible for it would be the person who controlled, or the corporation who controlled and operated, the road. It might be owned by anybody; but, if it were controlled and operated by somebody else, the person that controlled and operated it would be responsible."

There was a judgment for the plaintiff, and ineffectual efforts were thereupon made to collect it, both by fi. fa. and by attachment execution. The fi. fa. was defeated by the claim of the ferry company that the boats sought to be seized were its own property. An alias attachment execution, in which the ferry company was made the garnishee, was met by a distinctly misleading affidavit of the ferry company's secretary, in which he swore that the ferry company—

"knows the Washington Park Steamboat Company. * * * It has had business dealings with the Washington Park Steamboat Company. At the time said writ was served there were no accounts between said company and this garnishee; neither did the garnishee have, at the time of the service of said writ nor at the time of the making of this answer, any balance in its hands belonging to the said Washington Park Steamboat Company.

By this time the plaintiff began to suspect the true condition of affairs, and obtained the rule now under consideration, which seeks to amend the record by substituting the ferry company as the defendant, adding the words, "doing business as the Washington Park Steamboat Company." To this rule the ferry company appeared and filed an answer, and a good deal of testimony has been taken in support of the petition. There is no dispute concerning the essential facts. The depositions show that the ferry company is a New Jersey corporation, that it owned the line in question, that it used the name of the Washington Park Steamboat Company as a mere convenience for bookkeeping reasons, that no such corporation ever existed, and that all the business carried on in the name of the steamboat company was really carried on by the ferry company. As already stated, it was the ferry company that appeared and made defense to the suit, and it is the ferry company that has been interposing all the obstacles to the collection of the judgment.

Under these circumstances, I not only see no legal difficulty in the way of allowing the amendment; but I think it would be a discredit to the administration of justice if the true defendant could not be put formally upon the record. The ferry company is proved to be a New Jersey corporation; it voluntarily appeared to the suit by its counsel, who was also a member of its board of directors—for it need hardly be said that the steamboat company could not appear, whatever the pretense on the record may have been. It made defense on the merits, and was fully heard, declining to take a writ of error; and only after all this did it interpose the technical defense that the name of the defendant is not the name of a real person. This is not the situation with which some of the decisions are concerned, where a real person has been sued, and, after it has been ascertained that the suit has been erroneously brought, an offer is made to substitute another real person as defendant. Here the right defendant has been sued, has appeared and pleaded, and taken defense on the merits, and the only mistake is that the right defendant was called by a wrong name. But it is the wrong name only in the sense that it is not the defendant's corporate name. It is, however, the precise name that the ferry company has been using, and using moreover in the very transaction out of which the cause of action arose. I think, therefore, that it may be said with some force that the ferry company is hardly in a position to object to the amendment, since the so-called wrong name was assumed by the ferry company itself, and has been fully recognized by its conduct in the suit. And, still further, it is a case where the real defendant, knowing the mistake and having had abundant opportunity to correct it, has continued to mislead the plaintiff down to the last possible moment. It is a satisfaction to feel confident that the court is not so impotent as to be obliged to allow such conduct to succeed.

An analogous case is Bainum v. American Bridge Co. (C. C.) 141 Fed. 179, recently decided by Judge Buffington. The facts appear by the following quotation from the syllabus:

"The plaintiff's statement, in an action for personal injury against a foreign corporation, alleged to be a corporation of New Jersey, specifically set out the facts, clearly identifying the defendant, the work in which it was engaged, and the time and place of the injury. There were in fact two corporations, closely connected and having the same name, except that one was 'of New Jersey' and the other 'of New York.' Both had the same resident agent, on whom the process was served, and the same attorneys, who entered appearance for defendant and prepared the case for trial, when it was discovered that the New York corporation was in fact the one doing the work."

Under such circumstances it was held that the court had power, under sections 948, 954, Rev. St. (U. S. Comp. St. 1901, pp. 695, 696), to permit the plaintiff to amend by substituting the name of the real defendant intended; the court saying:

"There was no question as to the locality of the accident or of the identity of the company engaged in the work or employing the plaintiff. The counsel for that company appeared and prepared its defense and all parties supposed the real parties to the accident were the parties to the suit. Now, to refuse the beneficent power of amendment, so as to place on record the parties who had all along supposed they were on record, would be shocking to the sense of justice, and especially so when the statute of limitations would

bar another suit by plaintiff. The similarity of names misled counsel for defendant, and the failure of the plaintiff to know that there were two corporations of substantially the same name and engaged in the same general business was quite natural. There was no new cause of action stated, and the fact that the statute of limitations would bar the plaintiff unless the amendment was allowed has been held ground for such allowance. * * * By permitting this amendment, neither the nature of the case nor the real issue between the real parties is changed; and the federal courts permit amendments in furtherance of justice. Bamberger v. Terry, 103 U. S. 40, 26 L. Ed. 317; Hodges v. Kimball, 91 Fed. 845, 34 C. C. A. 103."

In the pending case the court is simply asked to make its record speak the truth, and I think there is no doubt that this may be done. As was said by Mr. Justice Strong in Insurance Co. v. Boon, 95 U. S. 126, 24 L. Ed. 395:

"Every court of record has power to amend its records, so as to make them conform to and exhibit the truth."

And accordingly an important amendment was allowed after the term at which judgment had been entered.

The rule to amend is made absolute, and the record is now amended wherever necessary, so that the suit may stand against the Gloucester Ferry Company, a corporation of the state of New Jersey, doing business as the Washington Park Steamboat Company.