No. 42,088

BETTY ANN HEATH, *Appellee,* v. REX MARTIN, an individual, d/b/a ROSEDALE CAB COMPANY, *Appellant.*

(359 P. 2d 865)

Opinion filed March 4, 1961.

*A. J. Herrod,* of Kansas City, argued the cause, and *John C. Russell,* of Kansas City, Mo., was with him on the briefs for the appellant.

*J. W. Mahoney,* of Kansas City, argued the cause, and *David W. Carson, John K. Dear, Ernest N. Yarnevich,* and *Joseph T. Carey,* all of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal in a damage action from the trial court's order sustaining plaintiff's motion by adding and substituting defendant, doing business as the Rosedale Cab Company, in place of and instead of the Rosedale Cab Company, a corporation.

On June 23, 1958, plaintiff filed her petition alleging that the Rosedale Cab Company was a corporation duly organized and existing under and by virtue of the laws of the state of Kansas and on the same date summons was issued to the Rosedale Cab Company. The summons was returned on June 27, 1958, showing service by delivery "to Ira Armstrong, Dispatcher for and on behalf of said Company, a true copy of the summons."

In paragraph 3 of her amended petition filed on August 12, 1958, plaintiff again alleged that the defendant Rosedale Cab Company was a corporation duly organized and existing under and by virtue of the laws of the state of Kansas, engaged in the business of transporting passengers for hire on the streets and thoroughfares of Kansas City, Kansas.

On August 13, 1958, the defendant in its answer to plaintiff's amended petition admitted the allegation as to defendant's corporate identity contained in paragraph 3 thereof.

On September 24, 1958, plaintiff moved to amend the prayer of her amended petition to increase the damages from $10,000 to $30,000, which motion was sustained.

On October 1, 1959, plaintiff filed a second amended petition with the same paragraph three as was contained in her amended petition and in its answer thereto on October 5, 1959, the therein named defendant again admitted the allegation as to its corporate identity. Plaintiff's reply of October 5, 1959, was a general denial.

A jury trial culminated on October 30, 1959, when the jury answered special questions and returned a verdict for plaintiff in the sum of $15,388.40.

On October 31, 1959, the then named defendant, Rosedale Cab Company, a corporation, filed a motion for new trial which contained the following excerpt:

"And now comes said Rosedale Cab Co., a corporation, and moves the Court . . . to grant said defendant a new trial of this action for the following causes which affect materially its substantial rights. . . ."

On November 9, 1959, Rosedale Cab Company moved to set aside parts of the jury's answers to special questions No. 2 ( *a, b, c* ) and No. 7 ( *b, c, d, e* ). Both of these posttrial motions were overruled and judgment was entered on the verdict.

The sheriff's return dated February 6, 1960, showed he was unable to find the defendant named therein and the return also carried the notation, "No property found." On the same date proceedings in aid of execution were commenced and hearing set for February 11, 1960, during which for the first time plaintiff and the trial court discovered that Rex Martin owned and operated four taxicabs and further that he owned the Rosedale Cab Company and had carried insurance but that he did not know the name of his insurance carrier. He had left the investigation of the accident and the matter of plaintiff's damages to the insurance carrier.

On February 15, 1960, plaintiff filed a verified motion narrating the foregoing facts and stated that in furtherance of justice she should be permitted to amend her petition to add the name of Rex Martin, doing business as the Rosedale Cab Company for the following reasons: Martin had been present throughout the trial; he had not been prejudiced by his own failure or that of his insurance company or its attorney to raise the question as to whether defendant was a corporation; an agent of the Rosedale Cab Company, whether it was a corporation or an individual doing business as such, had negligently injured plaintiff; no other corporation or company known as the Rosedale Cab Company existed; neither defendant nor his insurance carrier was prejudiced by the allegation the company was a corporation or by admitting it was a corporation in their pleadings; if they were in anyway prejudiced they had waived any right to object to the amendment by reason of their admissions; the insurance company intends to avoid liability as insurer of Rex Martin, an individual doing business as the Rosedale Cab Company, since the judgment was against the Rosedale Cab Company, a corporation. Plaintiff asked permission, under G. S. 1949, 60-759, to amend her petition by adding Rex Martin, doing business as the Rosedale Cab Company thereto. Martin had made a general appearance as defendant.

Martin filed an affidavit controverting plaintiff's motion about appearance except as a witness at the request of defense counsel; he stated he had applied to the city for licenses as "Rex Martin, d/b/a Rosedale Cab Company" and during the five years he had

owned and operated the four taxicabs, he had kept on deposit with the city the liability insurance policy issued by the Exchange Casualty and Surety Company to "Rex Martin, d/b/a Rosedale Cab Company"; he had received and turned the summons over to its agent; plaintiff could have checked with the city and discovered such facts prior to filing or during the trial of the lawsuit.

Defendant further stated that it was not until after the trial that he was asked who owned the taxicabs and operated the business of the Rosedale Cab Company in June, 1958; he had not attempted to conceal the ownership or operation or had he ever testified he was not the owner of the Rosedale Cab Company.

From Martin's answer to plaintiff's motion to permit amendment, these salient facts were testified to by Martin in the trial: The Rosedale Cab Company had four taxicabs at the time of the accident and trial; he was manager of the company and had been for approximately five years.

Martin further alleged, in substance, that after plaintiff had alleged the Rosedale Cab Company was a corporation, the attorney for Martin and the insurance company had relied thereon and assumed that plaintiff's counsel had checked the records at city hall and did not check them himself. Martin's attorney did not discover the company was not a corporation but in reality was Rex Martin, doing business as the Rosedale Cab Company, until after the case was tried.

The record reflects that when the trial court made its order of substitution of names on March 4, 1960, it made the following comments:

"Well, let's see what we know, for sure. We know the plaintiff's attorney made a mistake in his original petition when he alleged that the defendant was a corporation. We know that a summons was served on the dispatcher for the cab company, and that that summons was turned over to Mr. Martin, who turned it in to Mr. Bartling, who must have gotten in touch with the insurance company and employed Mr. Herrod to defend the case. Mr. Herrod prepared an answer admitting that the defendant was a corporation.

"Now, had the insurance company done anything except to file an answer admitting the corporate liability, we would have found this point long ago. In other words, had there been a motion to quash—had there been a demurrer on the ground of improper party defendant or something—so that it seems to me from that time on, from the time that answer was filed, plaintiff was lulled into a false sense of security, so to speak, in believing that she had the proper defendant in the lawsuit, and she and her counsel were lulled into that security by the actions of the insurance company, who now seek to escape liability on their policy.

"Now, when that insurance company assumed the defense of this lawsuit, they hired an attorney to handle the case, and he filed this answer admitting that Rosedale Cab Company was a corporation. Now they don't want to pay. To me, it's the grossest kind of injustice if the insurance company can escape liability in this case.

"The court, seemingly under 60-759, has the power—and let me read this again, now: 'The court . . . may, before or after judgment, in further-ance of justice, and on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party, or correcting a mistake in the name of a party. . . .'

"I am going to sustain the motion.

"I am going to substitute the name of Rex Martin, doing business as Rose-dale Cab Company—substitute that, quote: 'Rex Martin, doing business as Rosedale Cab Company'—make that the named defendant in this case."

The statutory provision governing our question as to the power of the trial court to allow an amendment to a pleading, process, or proceeding is G. S. 1949, 60-759:

"The court or judge may, before or after judgment, in furtherance of justice and on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party, or correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or conform the pleading or proceeding to the facts proved, when such amendment does not change substantially the claim or defense; and when any proceeding fails to conform in any respect to the provisions of this code, the court or judge may permit the same to be made conformable thereto by amendment."

We turn first to *Packing and Provision Co. v. Casing Co.*, 34 Kan. 340, 8 Pac. 403, because included therein was a very comprehensive and logical discussion which appears to express the attitude of the trial court in our present case. The Packing Company had sued the Casing Company as a corporation, an attachment order was served, and published notice given the Casing Company. Two continu-ances of time in which to file an answer were granted, one by stipu-lation. Such answer was filed under the same caption as the petition, alleging, first, a general denial and, second, a denial that the Casing Company was a corporation and alleging it was a copartnership. Plaintiff moved to amend its petition by changing defendant's name from a corporation to the four copartners, doing business as the Casing Company, and the court granted the amendment. Later, upon an attempted special appearance by the then four named defendants, the trial court dismissed the action for lack of jurisdiction over them because of lack of service and no entry of appearance. This court affirmed the trial court on allowing the amendment, and

reversed it on dismissing the action. Emphasis in the opinion centered around the appearance made when the answer was filed. The answer was held to be a general denial and answer as to the merits by which defendants entered their appearance and surrendered jurisdiction of their persons to the trial court. This court's clear approval of the trial court's allowance of the amendment was made evident by its use of the following language:

"Courts, under the reformed system of procedure, look to the substance of things rather than to form, and to persons, and things rather than to mere names. This manner of treating things constitutes the life and spirit of the reformed system of procedure. [p. 345] . . .

"It is idle to talk about all these appearances having been made by nobody or nothing, for appearances cannot be made in that way; and courts cannot allow themselves to be trifled with by permitting parties to make appearances which do not have the effect or the consequences of appearances." (p. 345, 346.)

Later in the same opinion, the court further stated:

"And it has also been held that a *judgment* rendered against a defendant, *omitting his christian name, cannot be considered as void.*" (Our emphasis.) (p. 346.)

While *Farmer's Bank v. Bank of Glen Elder*, 46 Kan. 376, 26 Pac. 680, was concerned mainly with replevin, a question was also raised concerning the trial court's discretion in allowing amendment of pleadings. It was there said:

"The district court also has power, *in the furtherance of justice,* to permit the amendment of a petition by striking out one name and inserting another, when it is shown that the first name was used by mistake." (Our emphasis.) (p. 378.)

See, also, *Service v. Bank*, 62 Kan. 857, 860, 62 Pac. 670; *Butter Tub Co. v. National Bank*, 115 Kan. 63, 68, 222 Pac. 754; *Russell v. American Rock Crusher Co.*, 181 Kan. 891, 897, 317 P. 2d 847; and particularly *McDonald v. Carlson*, 182 Kan. 480, 322 P. 2d 798, where there was a substitution of successor guardians and in holding the trial court erred in refusing to substitute the names of two successor guardians for that of one who had resigned, it was stated:

"Making the substitution order would have been merely a matter of procedure to be followed by the trial court and we think it was encumbent upon that court to do so in this case." (p. 487.)

The original petition in *Staley v. Espenlaub*, 127 Kan. 627, 274 Pac. 261, stated a cause of action in ejectment and the answer sought to quiet title in three named defendants, the board of county com-

missioners of Wyandotte county. The case came on for trial on the petition and answer, plaintiffs dismissed and left the court room. Upon the close of defendants' evidence on May 14, 1928, the trial court entered judgment quieting the county's title thereto, and on May 17, 1928, plaintiffs filed a motion to set aside the judgment alleging among other things that the three named commissioners were not proper parties to an action by or against Wyandotte county. Defendants were granted leave to amend their answer to correspond to the proof and the findings of fact recited in the judgment. After calling attention to the action involving the abandoning of the county court house building and real estate, and the fact that in the prayer of the amended petition, the defendants were referred to as the "commissioners of Wyandotte county," the opinion reads:

"If either party to the action had complained to the district court, the court would have disregarded the variance in name (. . . 60-760), or would have summarily ordered the variance to be corrected, or would have treated it as corrected." (p. 631.)

Later on in the opinion, this language was used:

"The subject of who was answering was made very plain by the amended answer, and the court concludes its discussion of this rather trivial subject by announcing that the county was sued, the county answered, and the county recovered judgment quieting its title against plaintiffs." (p. 631.)

The above decision was adhered to in a subsequent opinion denying rehearing. (*Staley v. Espenlaub*, 128 Kan. 1, 275 Pac. 1095.)

That such an amendment may be allowed in furtherance of justice was made clear in *Harper v. Hendricks*, 49 Kan. 718, 31 Pac. 734, where the following rule was laid down:

"Where an action is brought against several persons as trustees of a church, duly organized and existing as a corporation, and no demurrer is filed to the petition on account of a defect of parties, and no objection is taken thereto by answer, and the cause is heard before a referee and proceeds to judgment against such trustees, *held,* no material error is committed thereby; and further *held,* if it were necessary in furtherance of justice, after judgment, that the pleadings and judgment might be amended to correspond with the facts proved." (Syl. ¶ 3.)

See, also, 4 Hatcher's Kansas Digest, rev. ed., Pleading, § 126, p. 451, § 130, p. 452; 8 West's Kansas Digest, Pleading, § 237 (4); Dassler's Kansas Civil Code, Supp. Ed., Amendments to Pleadings, Chap. 21, §§ 11, 12, p. 225.

The decisions of other jurisdictions, and G. S. 1949, 60-759, and our decisions thereunder, show that the better rule, as above stated,

is that under the proper circumstances amendments to pleadings, processes, or proceedings before or after judgment, may and should be made in furtherance of justice. (*Blackwood v. Spartanburg Commandery No. 3, K. T.*, 121 A. L. R. 1320, anno. 1325, *et seq.*) The case of *Clemmens v. Washington Park Steamboat Co.*, 171 Fed. 168, which arose in the eastern district of Pennsylvania, was very similar to our present one. It was there held:

"A ferry company, which was a corporation of New Jersey, operated a line of excursion boats from Philadelphia under the assumed name of the 'Washington Park Steamboat Company.' A passenger to whom it sold a ticket under such name was injured, and brought suit against the steamboat company. The attorney for the ferry company, who was also a director, accepted service for the defendant, and appeared and defended the case on the merits; the trial resulting in a judgment for the plaintiff. Neither plaintiff nor the court was informed of the true facts until after an attempt to collect the judgment failed, and plaintiff moved to amend the record by substituting the name of the ferry company as defendant. *Held*, that such company, which was the real defendant, having in fact appeared and defended the suit, and there being no such person as the defendant named, the court had power to permit such amendment, under Rev. St. §§ 948, 954 (U. S. Comp. St. 1901, pp. 695, 696), authorizing amendments to cure defects of form." (Syl.)

In the opinion in the Clemmens case, the trial judge stated:

"Under these circumstances, I not only see no legal difficulty in the way of allowing the amendment; but I think it would be a discredit to the administration of justice if the true defendant could not be put formally upon the record.

. . . . . . . . . . . . .

"It is, however, the precise name that the ferry company has been using, and using moreover in the very transaction out of which the cause of action arose. I think, therefore, that it may be said with some force that the ferry company is hardly in a position to object to the amendment, since the so-called wrong name was assumed by the ferry company itself, and has been fully recognized by its conduct in the suit. And, still further, it is a case where the real defendant, knowing the mistake and having had abundant opportunity to correct it, has continued to mislead the plaintiff down to the last possible moment. It is a satisfaction to feel confident that the court is not so impotent as to be obliged to allow such conduct to succeed." (p. 171.)

We conclude that Rex Martin, who was the real defendant, made his appearance; with the help of able counsel he defended the action; he, at all times, had full knowledge no such corporation existed as that named in plaintiff's petitions and the answers because he was the sole owner thereof and was doing business under the name, Rosedale Cab Company, whereby plaintiff and her counsel, the trial court, and even defense counsel were so misled and lulled into such a false sense of security that the mistake in the name of the

business sued (an agent of which business had negligently caused plaintiff's injury and damage) was neither realized nor discovered by any of them until the hearing in aid of execution. Under such circumstances, the trial court had the power under G. S. 1949, 60-759 and it was correct in granting plaintiff's motion and ordering amendments, in furtherance of justice, to the end that Rex Martin, doing business as the Rosedale Cab Company was substituted for and made the named defendant in the case in place of the Rosedale Cab Company, a corporation.

The judgment is affirmed.