MARY F. HERRON ET AL., PLAINTIFFS IN ERROR, V. COLE BROTHERS, DEFENDANTS IN ERROR.

1. **Parties:** ACTION AGAINST PARTNERSHIP. This case, as set out in the record referred to at length in the opinion, *Held,* Not to fall within the provisions of sections 24 and 25 of the code, as the process runs against the defendants individually, their firm or partnership relation being stated as *descriptio persona.*

2. ———: ———. The method of suing and serving process provided for by the above sections of the statute is cumulative, and not exclusive of the method formerly pursued.

3. **The Evidence** considered, *And held,* To sustain the verdict.

4. **Instructions** given and refused, examined, *And held,* Rightly given and refused.

5. **Corporation:** EVIDENCE: BURDEN OF PROOF. In order to throw the burden of proving its corporate existence upon a corporation plaintiff, the allegation of the petition alleging such corporate character must be denied other than by a general denial of all the allegations of the petition not admitted to be true.

ERROR to the district court for Pawnee county. Tried below before BROADY, J.

*L. C. Chapman,* for plaintiffs in error.

Service of process: *Cleghorn v. Waterman,* 16 Neb., 226. *Leach v. Milburn Wagon Co.,* 14 Neb., 106. *Whitman v. Keith,* 18 Ohio St., 134. *B. & M. R. R. Co. v. Dick & Son,* 7 Neb., 242. Amendment of petition: *Field v. Morse,* 8 How. Pr., 47. *Hollister v. Livingston,* 9 How. Pr., 140. Bliss Code Pleading, Sec. 306. Verdict against evidence: *Kemmil v. Wilson,* 4 Washington, 308. *Boughton v. U. S.,* 12 Court of Claims, 337. Right to maintain action: *Hays v. Hathorn,* 74 N. Y., 486. *Towne v. Wason,* 128 Mass., 517. *Woodsum v. Cole,* 10 Pac. Rep., 331. *Morse v. Godfrey,* 3 Story, 364, 389. Instructions: *Levi v. Latham,* 15 Neb., 509. *Sons of Temperance v.*

*Brown*, 9 Minn., 157.    Bliss Code Pleading, Sec. 246, 247, 249.    *State v. Taylor*, 12 Ohio State, 133.    *U. S. Bank v. Stearns*, 15 Wend., 314.    *Lord v. Bigelow*, 8 Vt., 445.

*Humphrey & Lindsay*, for defendants in error, cited: Civil Code, Sec. 144.    *Reed v. Beardsley*, 6 Neb., 493. *Mills v. Miller*, 3 Neb., 87.    *Farris v. Merritt*, 63 Cal., 118. Hawes on Parties, Sec. 35.    *Overall v. Ellis*, 32 Mo., 326. *Carper v. Munger*, 62 Ind., 481.    *Hunter v. Levan*, 11 Cal., 12.    *Dulles v. DeForest*, 19 Conn., 201.    *McWilliams v. Bridges*, 7 Neb., 419.    1 Parsons Notes and Bills, 218.

COBB, J.

This cause was originally brought in the county court of Pawnee county, where the plaintiffs recovered judgment for the amount of their claim, being the principal and interest after due, according to the terms of a promissory note.

The defendants appealed the cause to the district court of said county, where the plaintiffs declared on a promissory note made and executed by the defendants Herron & Chapman, partners, to Williams & Brown, for the sum of $140, payable on or before the first day of September, 1884, at bank of George & Davis, in Burchard, Nebraska. That before said note became due, and for a valuable consideration, the same was transferred by endorsement and sold to the plaintiffs, who were then the owners and holders thereof (setting out a copy of the note and endorsement), with the allegations that the said note had long been due and unpaid, etc., and that there was then due and payable from said defendants to said plaintiffs upon said promissory note the sum of one hundred and forty dollars, and interest thereon from September 1, 1884, at the rate of seven per cent per annum, etc.    Afterwards, by leave of the court, the plaintiffs amended their said petition by adding the words "a corporation," after the names of the

plaintiffs in the title, and the words, "a corporation duly organized and existing under the laws of the state of Iowa," after the words "the plaintiffs," in the introductory part of the petition.

The defendants filed their answer, consisting, first, of a general denial; second, that on or about the 1st day of May, 1884, there was a pretended firm doing business in the city of Tecumseh, etc.; that said city of Tecumseh was the principal place where the said pretended firm did its business; the said pretended firm was known and did business in the firm name of Williams & Brown; that they had been doing business in said firm name for a longer period of time than twenty days from the date of the note mentioned in plaintiffs' petition; that the individual names of the persons composing the said firm were A. H. Williams and J. D. Brown; that A. H. Williams, the Williams of the said firm of Williams & Brown, at the town of Burchard, in Pawnee county, did propose to and offer for sale the note described in plaintiffs' petition, to George & Davis, bankers, at their bank, on or about May 25, 1884, and that said A. H. Williams then and there endorsed the note for the purpose of selling and disposing of the same, as follows: "Williams & Brown," "A. H. Williams," which endorsement is the endorsement set out in plaintiffs' petition; that the said George & Davis, after the said endorsement was made for the purpose aforesaid, refused to buy the said note; that the purpose for which the endorsement was made thereby entirely failed; that afterwards the said note was by A. H. Williams turned over to said J. D. Brown, with the said endorsement remaining thereon, which was not erased; that the said pretended firm of Williams & Brown, at the time they pretended to form said firm and engage in business as aforesaid, did not make and severally sign, acknowledge, and deliver to, and file with the clerk of Johnson county, or Pawnee county, a certificate (here follows a description of the certificate) required

by statute to be made and filed with the county clerk by all firms and private partnerships, etc.; that the said Williams & Brown were not incorporated, etc.; that they held themselves out to, and induced the public to believe them to be a lawful firm, composed of A. H. Williams and J. D. Brown, when in truth and in fact they were not; that the said representations were made and said inducements held out for the purpose of defrauding and misleading the public, and to avoid equitable defenses which any person might have, and to enable them to defeat the ends of justice; that the said Williams & Brown is an illegal and fictitious firm, and that defendants had no knowledge until a long time after suit was brought against them that said firm was an illegal and pretending firm; that the endorsement that was made at the time by the said A. H. Williams, when he offered to sell the same to George & Davis as aforesaid, and which is set out in plaintiffs' petition, is the only endorsement that was ever made upon the said note, and that the same has never been accepted by the plaintiffs; that J. D. Brown never endorsed the note set out in plaintiffs' petition, and that no person ever did so for him; that the endorsement made by A. H. Williams, above described, is the only one that had ever been made upon said note; that said note was placed in the bank of Russell & Holmes by A. Canfield for J. D. Brown, as collateral, and that the note was not endorsed by any one at the time of placing it in the bank of Russell & Holmes, except that of A. H. Williams, at Burchard, which is the endorsement set out in the petition; that said note was not accepted by the plaintiffs at the time it was left with Russell & Holmes as collateral; that the plaintiffs are not the real parties in interest, as required by Sec. 29 of the code; that defendants are not suing in the capacity of any of the persons named in Sec. 32 of the code; that there was and is no consideration received or paid by these plaintiffs to Williams & Brown for the note, and therefore it was of no

advantage whatever to Williams & Brown or A. H. Williams to obtain the endorsement set out in plaintiffs' petition; that the endorser of said note, Williams & Brown, is a fictitious firm, and the same never was in legal existence, and that they never had power to endorse and receive, or to have made in their firm name of Williams & Brown, such negotiable instrument.

There was a trial to a jury, which found for the plaintiffs, and assessed their damages at $166.40.

Special findings were submitted to the jury, which were returned as follows:

I.    Did the defendants execute the note sued on?    Answer.    Yes.

II.    If you answer the first interrogatory in the affirmative, did the defendants receive a valuable consideration for the note?    Answer.    Yes.

III.    What is the aggregate amount of the principal and interest of the alleged note copied in the petition? Answer.    $166.40.

The defendants bring the cause to this court on error, and assign the following errors:

1.    The district court had no jurisdiction of the defendants.

2.    Nor of the subject-matter.

3.    The court erred in giving to the jury instructions 1, 3, 5, and 6, asked for by plaintiffs.

4.    And the instruction 2, given on its own motion.

5.    And in refusing instructions 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16, asked for by defendants.

6.    And in giving to the jury special findings.

7.    And in admitting the evidence of Charles A. Holmes' first deposition, in Q. 1, 2, 3, 4, 6, and same witness' second deposition, Q. and A. 2, 3, 4, 5, over objections and exceptions thereto.

8.    And in admitting Q. and A. 6 and 9 of Cyrus Townsend's deposition, over objections and exceptions thereto.

9.   And in admitting Q. and A. No. 3 of J. D. Brown's deposition, over objections and exceptions thereto.

10.   And in excluding Q. and A. 6, 8, and 9 of the deposition of J. L. Young, over objections and exceptions thereto.

11.   In overruling and not sustaining defendants' motion at p. 83 of the record.

12.   In overruling the motion for a new trial.

13.   In rendering judgment for the plaintiffs and against the defendants.

Such of the errors as are discussed by plaintiffs in error in the brief of counsel will be considered.

The first point arises under the 1st and 2d assignments, and has reference to the mode of service of the original summons in the action.   The defendants are sued as Mary F. Herron and William H. Chapman, partners, doing business as Herron & Chapman, in Nebraska.   The return of the sheriff is to the effect that, on the 22d day of December, 1884, he served the within named William H. Chapman, and on the 23d day of December, 1884, the within named M. H. Herron, by delivering to each of said defendants, etc.   The contention of counsel is, that the suit is against a partnership, a firm doing business within this state, and that, under section 25 of the code, in order to give the court jurisdiction of said firm a service must have been made by leaving a copy of the writ at their usual place of business.

Sections 24 and 25 of the code read as follows:

"Sec. 24.   Any company or association of persons formed for the purpose of carrying on any trade or business, or for the purpose of holding any species of property in this state, and not incorporated, may sue and be sued by such usual name as such company, partnership, or association may have assumed to itself or be known by, and it shall not be necessary in such case to set forth in the process or pleading, or to prove at the trial, the names of the persons composing such company.

"Sec. 25. Process against any such company or firm shall be served by a copy left at their usual place of doing business within the county, with one of the members of such company or firm, or with the clerk or general agent thereof, and executions issued on any judgments rendered in such proceedings shall be levied only on partnership · property."

These provisions give a cumulative remedy to, as well as against, unincorporated companies, associations, and firms organized for the purpose of trade or business, and actually carrying on trade and business in this state. So far as the same relate to the service of process, it is often of great convenience, enabling a plaintiff to bring a company, association, or firm composed of a number of persons into court by the service of process by leaving a single copy thereof at their place of business, but it does not exclude a plaintiff from serving his process personally on each member of such association, company, or firm, if he chooses.

The object of process and its service is twofold. First, to give the court jurisdiction; and, second, to give notice to the parties. While in this class of cases a plaintiff may, without setting out the individual names of the persons composing the company, association, or firm, sue it by name, by such usual name as they may have assumed to be known by, and in that case make service as hereinbefore stated; but in that case his judgment and execution will only go against the property of such company, association, or firm, and not against that of the individual members thereof.

But there is nothing in these provisions, nor in the statute, so far as I am advised, to prevent a plaintiff from proceeding against the members of such company, association, or firm, although he may also describe the party as a copartner, and set out the firm name by which the copartners are known; and in that case service should be made on the members individually, or if not found, by leaving copies at their usual place of abode. In the case

at bar, the plaintiff seems to have sufficiently complied with the law in these respects.

The next point raised by the plaintiffs in error is, that the plaintiffs, by inserting the words *a corporation*, after the words *Cole Brothers*, brought a new and different party plaintiff into the case, and that the same was not properly an amendment.

By reference to the transcript, it appears that the transscript from the county court, where this cause was originally tried, was filed in the district court on April 8, 1885. On the 8th day of June, following, the plaintiffs filed their petition in the district court. On the 7th day of December, following, leave was given to file an amended petition within thirty days, and on the 31st of the same month the amended petition was filed. On May 4, 1886, defendants moved to dismiss the appeal for want of prosecution, which motion was, on the next day, overruled, whereupon the defendants withdrew their demurrer (the first mention of a demurrer in the transcript), and the court grants twenty days to file the defendants' answer, and cause continued. On the 10th of May defendants filed their answer, a summary of which is above given. There is no record, therefore, upon which to found the objection to the amendment of the petition. It does not appear that such amendment brought into the case either a new party or a new cause of action; if it did, the time to have taken advantage of it was either before the answer, or in the answer, neither of which was done. Counsel seem to contend that this question was raised by the motion to dismiss for the want of prosecution. We cannot agree to that view.

The next point is, that the amended petition does not state a cause of action, in that the plaintiffs do not thereby claim that there is "due them on said note a specific sum which they claim." Plaintiffs' in error brief was evidently prepared and printed before the proceeding by which the defendant in error, upon suggestion of a diminution of

the record of the amended petition, obtained leave and filed a correct transcript from the district court. The copy of the amended petition so supplied is not open to the objection here made.

The next point raised is, that the verdict is not sustained by the evidence. The deposition of C. A. Holmes was read in evidence at the trial. He testified that he was a member of the firm of Russell & Holmes, of Johnson county, Nebraska. He had in his possession, produced and attached to his deposition, the original note sued on. In answer to the question, when and how he first came into the possession of the note, by whom the same was given, and for what purpose, he stated : "In the month of July or August, 1884, the note was placed in the bank of Russell & Holmes by J. D. Brown, or A. Canfield for him, as collateral to certain notes given by J. D. Brown to the plaintiffs, of which we notified them; that on August 30, 1884, deponent mailed the note to George & Davis, bankers, at Burchard, Nebraska, for collection; that after considerable correspondence with George & Davis about the note, they were instructed to send it to plaintiffs' attorney for collection."

The deposition of Cyrus Townsend was also read in evidence, stating that he resides at Tecumseh; that he is acquainted with some of the parties to this suit, and that he was present at Burchard and delivered for J. D. Brown to Herron & Chapman, there, in June, 1884, a quantity of lightning rod material; they accepted the material, lightning rod, balls, vanes, points, and braces, and seemed well pleased with it; that he left Tecumseh on Sunday at 5 A.M., and reached Burchard at 5 P.M., drove to the hardware store of Herron & Chapman, there met Mr. Williams, who said he would go up to Mr. George's and get Mr. Chapman, of the firm of Herron & Chapman, and return. Mr. Chapman said he was glad that I had arrived, as there was a man there who wanted to have his house *rodded*;

then we unloaded the rods, counted all the balls, vanes, and braces to see that it was all there to complete the 500 feet, and then he said that would be all for now, and for deponent to come around early in the morning and show him how to work the rod before going away. Went up there next morning, picked out what rod it required for this house, went into the store, and Williams told him we had better settle now and take his note; they made out the note, it was signed by that young man, the witness thought was Chapman. They were both there, Mr. Chapman and Mr. Herron. When the note was signed, witness gave it to Williams, who said that he was going now, but witness should stay and show how to rod that house. Witness stayed and helped to do the job. The note given was for $140. Williams took it and went down to George & Davis' bank, and wanted some money on it, or wanted to cash it all, but said they wanted too much per cent, and he wouldn't sell it. Witness saw Williams endorse the note, and offer to sell it in the bank. Mr. Williams had the contract for rodding this house at 40 cents per foot, and he turned the contract over to Herron & Chapman, if they would make this purchase of him. Witness identified the note purchased by C. A. Holmes, and attached to his deposition, as the note given to Williams by Herron & Chapman at the time mentioned in his deposition, and the one witness saw endorsed in the bank and offered for sale to George & Davis.

The deposition of J. D. Brown was introduced in evidence, in which he stated that he was acquainted with the parties to the action; that he is the partner of Williams & Brown, to whom the note in suit was given by Herron & Chapman, of Burchard; that the same was given for lightning rod material, in 1884; that the note sued on and identified by C. A. Holmes in his deposition is the same note that was turned over to me by Williams and Cyrus Townsend when they returned from Burchard. "I fur-

nished the goods and received the note of Herron & Chapman, through the hands of Williams."

Q. State whether or not you endorsed said note. If so, to whom, and for what purpose?

A. I did not; the endorsement is in the handwriting of A. H. Williams, one of the payees of the note, and I am well acquainted with the handwriting of A. H. Williams.

Q. State whether or not the endorsement was made in the usual course of business, and for a valuable consideration?

A. Yes, it was placed as collateral against my notes in the bank of Russell & Holmes, which they held for Cole Brothers, of whom I purchased the lightning rod material, and they were to take this note and apply to my notes.

Q. State any of the facts in connection with the sale of such material, or the giving or endorsement of such notes, that you remember?

A. I furnished the material for which the note was given, and received the note in payment of the material, which consisted of 500 feet of $\frac{3}{4}$ inch galvanized lightning rod, and fixtures, balls, vanes, braces, and points, sold to Herron & Chapman at the time at which the note was given, and that I turned this note over to Russell & Holmes to pay my note given to Cole Brothers, and same was due before the note sued on became due.

The second deposition of Charles A. Holmes, given in evidence, stated that, during the summer of 1884, July or August, his firm, Russell & Holmes, received from Cole Brothers collection against J. D. Brown, and received from Brown, or from Canfield for him, a note against Herron & Chapman as collateral "to the notes we had against Brown. This collateral note is the note in controversy;" that at the present time, as agent for Cole Brothers, Russell & Holmes hold indebtedness against Brown and in favor of Cole Brothers, consisting of three notes in favor

of Cole Brothers against J. D. Brown.   On one there is a balance due of $3; two others dated June 6, 1884, both due October 1, 1884, with interest at ten per cent from date; one for $44.30, the other $47.35; nothing has been paid on either, the total due $117; that this is the same paper we held for Cole Brothers when the Herron & Chapman note was taken.

From this testimony, adduced on the trial and submitted to the jury, I think the evidence fully supports the verdict.

The next point by the plaintiffs in error in the brief is, that the action is not brought in the name of the real party in interest. To this there are cited a number of cases, nearly or quite all of which are to the point that, when a note of a third person is transferred *bona fide* before due, as collateral security to an existing debt held by the transferee against the transferer, without an obligation to do so, and both parties are left in respect to the pre-existing debt in *statu quo*, no new consideration stipulating for delay or credit being given or right parted with by the creditor, he is not a holder of the collateral for value in the usual course of trade, and receives it subject to all the equities existing against it at the time of the transfer. This proposition is fairly supported by the authorities cited, but I do not think this question arises in this case. No point is made by the plaintiffs in error in the brief, nor by the petition in error, that they were prohibited from proving any fact tending to show a defense, either legal or equitable, to the note, but their contention seems to be that, because the plaintiffs did not take the note in such manner as to free it from all legal and equitable defenses, that they are not the real parties in interest.

It is only necessary to state this proposition to discover its fallacy.

The next point made is, that the court erred in not giving instructions 11, 12, and 13, as follows:

"11.    The jury is instructed that when a debt not yet. due, and a collateral bill or note is endorsed as security, and that there is an agreement for delay until the collateral shall mature, such an agreement by the creditor constitutes a consideration, and makes him a holder for value. You are instructed that in this case there is no evidence showing that these plaintiffs agreed to delay until this note at issue became due, and that the plaintiffs as holders of the note as collateral security are not *bona fide* holders for value in the usual course of business.

"12.    That if you believe from the evidence that J. D. Brown transferred the note sued on to these plaintiffs to secure a pre-existing debt, in respect to which both parties are left in *statu quo*, and without plaintiff parting with any right which he had at the time of the transfer therein, that in that case the plaintiffs are not holders of the note for value in the usual course of trade, but he receives it subject to all the equities existing against it at the time of the transfer.

"13.    That the mere transfer of such collateral to the plaintiffs in the manner pointed out in the foregoing instruction, raises no presumption of a stipulation for further time on the pre-existing debt which will appear to defeat the equities of the defendants existing at the time of the transfer."

These instructions, asked and refused at the trial, are based on the proposition above referred to, and were not applicable to the pleadings or evidence in the case, and were therefore properly refused.

The next point is that of the refusal of the court to give the following instruction asked by defendants:

" That the mere acts of writing the names of Williams & Brown, A. H. Williams, on the back of this note, is not sufficient to constitute an endorsement of the note, but to complete it as such the further act of delivering by Williams & Brown to the plaintiffs, with the intention of giving them legal title to it, is necessary."

What is said in reference to the 11th, 12th, 13th, apply equally to the 7th.

They also make a point on the refusal to give the 5th and 15th instructions asked, as follows :

" 5. That in the state of Nebraska an action must be prosecuted in the name of the real party in interest; that to entitle the plaintiffs to maintain this action upon the note at issue in the pleadings, the plaintiffs must be the legal owner and have right of possession of the note, and such ownership must be sufficient to protect the defendants upon a recovery against them from a subsequent action; and that it is competent, therefore, for the defendants to show, if they can, that the plaintiffs paid no consideration for the note, and that they are not the legal owners of it."

" 15. The jury is instructed that the plaintiffs are suing the defendants upon a promissory note which has the appearance of being signed by a firm or partnership, and if the jury should find from the evidence that these defendants were, at the date of the note, a firm or partnership, and that the note was executed by either of the defendants for the firm or partnership without the consent of the other, the burden of proof is upon the plaintiffs to prove that the firm or partnership was a trading firm or partnership, or that the giving of the note was necessary to the carrying on the business of the defendants at the time as a firm or partnership, or that it is usual for such firm or partnership, as the evidence shows the defendants to have been, to execute promissory notes; and if you find that the plaintiffs have failed in this proof, you must then find for the defendants."

I see no special objection to the law so far as stated in the 5th instruction, and in a case to which such law is applicable it is probable such instruction would be deemed proper to be given. It is in accordance with the California case of *Woodsum v. Cole,* 10 Pacific R., 331, cited by

counsel for plaintiffs in error, but it is not applicable to either the pleadings or evidence in the case at bar.

The same may be said of the 15th instruction. No foundation is laid, either in the pleadings or by evidence adduced or offered, to which said instruction as presented would apply. I do not think that in a case such as suggested by the instruction offered, the burden of proof would be thrown upon the plaintiffs to prove the nature and character of the partnership.

The evidence in the case at bar proves that the partnership of the defendants was a trading partnership; that they kept a hardware store at Burchard; hence it necessarily followed that each partner held out the other to the world as authorized to transact business for the firm, including the signing of promissory notes for hardware purchased. The weight of evidence is to the effect that the note in question was given for hardware sold and delivered. The only portion of said instruction proper under the pleadings and evidence had been given in the 2d instruction, probably given by the court on its own motion, as follows:

"In order to make out a *prima facie* case, the plaintiffs must prove the making of the note by the defendants, and the transfer to plaintiffs by the payees of the note. If the plaintiffs have proved this, you must find for the plaintiffs, unless the defendants have shown by a preponderance of evidence that there was no consideration for the making of the note. Here some mooted questions of law arise that may be taken care of hereafter, without in any event causing another trial, by your answering the three special findings submitted to you, which you will answer and return together with your general verdict."

It will be here observed that the court refers to the special findings submitted to the jury. And these findings must be held to settle the facts, as far as this case is concerned, as there found, that the defendants executed the note sued on, and that they received a valuable considera-

tion therefor; also as to the amount of principal and interest due to the date of the judgment.

The plaintiffs in error also make the point that the court erred in refusing to give the 16th instruction, as follows:

"16. The jury are instructed that the plaintiff is suing as a corporation duly organized under the laws of Iowa, and that the defendants have in their answer made a general denial to plaintiffs' petition, the pleadings as they stand form a general issue of the matter thus pleaded. You are instructed under this general issue it is the duty of the plaintiffs suing as a foreign corporation, organized under the laws of and in the state of Iowa, to prove by a preponderance of the testimony their corporate charter, and if you find from the evidence that the plaintiff has not proven those facts by a preponderance of the testimony, your verdict must be for the defendants."

As to this point it will be sufficient to say that it came squarely before this court in the case of the *National Life Insurance Company v. Robinson*, 8 Neb., 452. The action was brought by the corporation against A. J. Cropsey, to foreclose a mortgage of real estate. Seth Robinson, holding a junior mortgage of the same, was made a party defendant. He answered, after first denying all knowledge or information as to the plaintiff's cause of action, and denied all the facts of the petition except as to his own lien. The cause went to a referee, who reported, "that the plaintiff claimed to be a corporation empowered to do business in the district of Columbia, but was only empowered to sue in the circuit and district courts of the United States, and as a conclusion of law that said corporation cannot bring the suit in this court." Judgment having been rendered accordingly in the district court, the plaintiff appealed. The court, in the opinion, say that, "the answer of the defendant Robinson did not put in issue the corporate existence of the plaintiff, nor its power to sue

in said court; that could only be done by demurrer, or by special denial in the nature of a plea in abatement. 1 Chitty Plead., 448, and the authorities there cited in Note 2." See *Zunkle v. Cunningham*, 10 Neb., 162; and *Dietrichs v. L. & N. W. R. R.*, 13 Id., 43.

I see no reason for departing from the rule as laid down in that case. No doubt the defendant's general denial at the commencement of his answer was sufficient to put in issue the execution and delivery of the note, but it is evident that the defense relied upon, and to which the answer is almost entirely devoted, is that of the illegality of the firm or partnership of Williams & Brown, by reason of their neglect to execute and file a certificate of partnership, as provided by statute. Defendants, at the trial, introduced the deposition of J. L. Young, county clerk of Johnson county, and thereby proved the non-existence of such certificate on the records of the county. I deem it immaterial that the witness speaks of the articles of incorporation, for articles of copartnership, doubtless intended. While according to the letter of the statute the continuing of such firm to do business as a firm, for a length of time exceeding twenty days, without recording articles of copartnership, would have subjected each member of the firm to the payment of a fine, I do not think it would render the acts of the firm illegal. But as the point is not presented in the brief of counsel or the bill of exceptions, it will not be examined.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.