## LEAHY et al. v. HAWORTH.

(Circuit Court of Appeals, Eighth Circuit. November 7, 1905.)

No. 2,168.

1. EQUITY—AMENDMENT OF BILL.

Where an English executor filed a bill in equity in a federal court, in his individual capacity as the legal owner, to foreclose a mortgage owned by his testator, and which matured after his death, it was within the power of the court to permit the filing of an amended bill by complainant, in his representative capacity as executor, setting up the same cause of action.

2. EXECUTORS—RIGHT TO SUE IN EQUITY IN FOREIGN JURISDICTION—SUBSEQUENT QUALIFICATION.

A foreign executor may institute a suit in equity in a federal court to foreclose a mortgage belonging to the estate of his testator, and if the bill is filed within the time allowed by the statute of limitations his subsequent taking out, before the hearing, of ancillary letters testamentary or of administration in the local jurisdiction will relate back to the date of the filing of the bill, not only for the purpose of qualifying him to maintain the suit, but also for the purpose of the statute of limitations.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 2330.]

3. SAME—QUALIFICATION—NEBRASKA STATUTE.

Comp. St. Neb. 1901, §§ 2677, 2678, providing for the appointment and qualification of executors, does not require an executor to take an oath as such, and the fact that he does not do so will not affect his right to maintain a suit to collect assets of the estate.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 142.]

4. BILLS AND NOTES—TRANSFER BY INDORSEMENT—GUARANTY.

Under Comp. St. Neb. 1901, § 3380, which provides that "all bonds, promissory notes, bills of exchange, foreign and inland, drawn for any sum or sums of money certain, and made payable to any person or order, or to any person or assigns, shall be negotiable by indorsement thereon so as absolutely to transfer and vest the property thereof in each and every indorsee successively," as construed by the Supreme Court of the state, a written guaranty, signed by the payee on the back of a note payable to his order, constitutes an indorsement with an enlarged liability, and transfers the legal title free from equities existing between the maker and payee.

5. SAME—ASSIGNMENT.

A written assignment on the back of a promissory note payable to the order of the payee, signed by such payee, is the equivalent of a blank indorsement to transfer title to the note free from equities, either under the law merchant or Comp. St. Neb. 1901, § 3380, which makes a note negotiable by indorsement where payable "to any person or order or to any person or assigns."

Appeal from the Circuit Court of the United States for the District of Nebraska.

On July 12, 1887, the appellants borrowed $3,000 from a Massachusetts corporation, called the Dakota Mortgage Loan Corporation, and executed their note or bond for that sum payable to the order of the corporation, maturing July 1, 1892. This note was negotiable on its face. To secure its due payment, appellants hereinafter called defendants, executed and delivered to the corporation, a mortgage conveying real estate owned by them and situated in the state of Nebraska. Soon after receiving the note the corporation sold it, together with the mortgage, to John Stuart & Co., brokers, of Manchester, England, and placed on the back of the note the following indorsements:

(1) "For value received the Dakota Mortgage Loan Corporation hereby assigns and transfers the within note and coupons, together with all its right, title and interest under the real estate mortgage securing the same, without recourse, to ———. The Dakota Mortgage Loan Corporation, by Allison Z. Mason, Treasurer."

(2) "The Dakota Mortgage Loan Corporation in consideration of value received, hereby guarantees the payment of each coupon at maturity and collection of the within bond; provided, however, that the said corporation reserves the right to repurchase this bond at any time, at its face and accrued interest to the time of repurchase, and a refusal to legally convey the bonds and mortgage deed shall release said corporation from further liability. In witness whereof the Dakota Mortgage Loan Corporation has signed and delivered these presents by its treasurer, this 13th day of August, 1887. By Allison Z. Mason, Treas."

Subsequently, and before maturity of the note, John Stuart & Co. sold the note and mortgage for value to Walter Haworth, a citizen of Great Britain and resident of Manchester, England, who died before the maturity of the note. Jesse Haworth and Isaac H. Morris became executors of his will by appointment of an English tribunal. Morris died, and Jesse Haworth, the appellee, was left the sole surviving executor under the English appointment. Prior to the maturity of the note the name of the Dakota Mortgage Loan Corporation was by an act of the Legislature of Massachusetts changed to Globe Investment Company. Shortly after the maturity of the note the defendants Mary, Richard, and Joseph Leahy borrowed from their codefendant, William Eugene Hayward, $3,000, executing to him as security therefor a mortgage on the same premises which they had before conveyed to secure the loan to the Dakota Mortgage Loan Corporation, and with this money paid the Globe Investment Company the entire amount of principal and interest then due and owing on the first-mentioned loan. At the time of making this payment defendants had no actual knowledge that the Globe Investment Company was not the owner of the note and mortgage. The Globe Investment Company, instead of remitting the money to England and actually paying the note in question, appropriated the same to its own use and continued to report to John Stuart & Co. that the debt remained unpaid and that the borrowers were paying interest semiannually. The Globe Company for some time remitted to John Stuart & Co., the semiannual installments of interest as they were supposed to accrue. These remittances were received by the last-named company, for itself or its transferee, with no knowledge of the payment made to the Globe Investment Company. Subsequently the Globe Company failed, the remittances to England ceased, and shortly thereafter, on September 23, 1896, this suit, a bill in equity to foreclose the mortgage, was instituted in the Circuit Court for the District of Nebraska, by Jesse Haworth and Isaac H. Morris, the English executors, not in their capacity as executors, but as owners and holders of the note and mortgage in question. Subsequently, and after the death of Isaac H. Morris, Jesse Haworth, hereinafter called complainant, filed an amended bill disclosing the death of his co-complainant, but still seeking to recover in his individual capacity. The suit came on for trial and after an intimation by the trial judge that complainant could not maintain the action, he took leave to file an amended bill. This last amended bill was filed June 28, 1902. It was a suit to foreclose the mortgage first mentioned, given to secure the note for $3,000 held by Walter Haworth at the time of his death. It differs in no respect from the former bills, except that the complainant styles himself "sole executor of estate of Walter Haworth, deceased." He sets forth his own and Isaac H. Morris' appointment as executors of the estate of Walter Haworth in England, their due qualification, the death of Isaac H. Morris, and his sole survivorship in the trust. He further alleges that afterwards he applied to the probate court in Harlan county, in the state of Nebraska, having jurisdiction over such matters, and was on September 20, 1902, duly appointed executor of the last will and testament of Walter Haworth, deceased; that he still is the acting and qualified sole executor of such estate. Issues were properly joined and on the trial a de-

cree of foreclosure was rendered. To reverse this decree an appeal was duly prosecuted to this court.. There are 14 assignments of error, but counsel for defendants in their brief reduce them, for the purpose of our consideration, to the following 3: "(1) That the court erred in assuming that the complainant had qualified as executor under the laws of Nebraska and had thereby qualified himself to sue in his representative capacity. (2) That the court erred in holding that, although the proceedings in the probate court in Nebraska were not commenced until more than 10 years after the maturity of the debt, still that those proceedings might relate back to the date of the filing of the last amended bill, not only for the purpose of qualifying the plaintiff to sue, but also for the purpose of bringing the suit within the period of the statute of limitations. (3) That the court erred in holding that the assignment placed upon the back of the note had the same legal effect as an indorsement."

T. J. Mahoney (J. A. C. Kennedy, on the brief), for appellant.
C. C. Flansburg (R. O. Williams, on the brief), for appellee.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first and second assignments of error arise from facts so interwoven that they may well be considered together. By the statutes of Nebraska in force at the time the transactions now under consideration were had the statute of limitations barred complainants' right to foreclose the mortgage in question in 10 years after the maturity of the note. Section 5596, Comp. St. Neb. 1901. The note was executed in 1887, payable July 1, 1892. On June 30, 1902, therefore, the right to foreclose the mortgage given to secure the payment of the note was barred. The suit instituted in 1896 by the English executors in their individual capacity was on the theory that, inasmuch as Walter Haworth died before the note matured, he having at the time of his death no cause of action against the defendants, no such cause of action descended to or was vested in his executors; that what was vested in them was the legal title to all chattels of the testator in trust for the purpose of administration under the law; and that as such legal owners they might, in their own names, sue to recover the same or to enforce any right, like that of foreclosure, incidental to the ownership of the chattels. This seems to have been a recognized theory of the common law. See Griffith v. Frazier, 8 Cranch, 9, 3 L. Ed. 471; Kane v. Paul, 14 Pet. 33, 10 L. Ed. 311; Giddings' Executors v. Green (C. C.) 48 Fed. 489, and cases cited. But the learned trial judge ruled that this common-law right was superseded by sections 5618 and 5621 of the Compiled Statutes of Nebraska of 1901 relating to civil actions. He made this ruling on June 13, 1902, and gave complainant 15 days within which to amend his bill. Complainant, instead of standing on his right to sue in his individual capacity, acquiesced in the ruling and availed himself of the leave to amend, and on June 28, 1902, two days before the statute of limitations had run, filed his last amended bill. In this he made substantially the same averments as were made in the prior original and amended bills concerning the execution of the note and mortgage and the breach of the condition of the mortgage and further made allegations showing the original appointment in Great Britain

of himself and Isaac H. Morris, the death of Morris, and that he afterwards, on September 20, 1902, was duly appointed executor by the probate court of Harlan county, in Nebraska.

In this last-mentioned bill Haworth remained complainant as before, but in a new capacity; then as an individual, now as sole executor of the estate of Walter Haworth, deceased. The cause of action remained as it was from the beginning, a breach of condition in the mortgage, entitling complainant to foreclose the same, and the action remained the same as at the beginning, an action to foreclose the mortgage given to secure payment of a note for $3,000 held at all times by himself. Such being the case, the amendment, as we have heretofore held, was permissible practice, and related back to thĕ commencement of the suit. McDonald v. State of Nebraska, 41 C. C. A. 278, 101 Fed. 171, and cases cited. See, also, Herron v. Cole, 25 Neb. 692, 41 N. W. 765, and Hines v. Rutherford, 67 Ga. 606.

The next question for consideration is whether the filing of the last amended bill by complainant without having secured his appointment as executor in Nebraska until after the filing thereof is fatal to his right of recovery. In considering this question it should be borne in mind that complainant had an interest in the subject matter of foreclosing the mortgage in question even though he did not have a standing in court to do so. He was, by virtue of his appointment in Great Britain, the holder and owner of the note secured by the mortgage, and had a duty imposed upon him by law to collect it. No appointment as ancillary executor in Nebraska could add anything to his legal title or to his right to collect the same. Such ancillary administration is required as a matter of public policy to insure the satisfaction of local creditors out of local assets before they are withdrawn from the state or turned over to the domiciliary adminstrator for that purpose. This policy is equally subserved, whether the appointment as executor actually occurs before or after the institution of the suit, provided, only, that it shall be made before trial. From these considerations it is obvious that whether the appointment of an ancillary executor be made before the bringing of a suit or afterwards, but before the trial, is purely formal and technical.

In the case of Swatzel v. Arnold, 1 Woolw. 383, Fed. Cas. No. 13,682, Mr. Justice Miller, when presiding in this circuit, had before him a question similar to that which now confronts us. In his case the plaintiff brought in Nebraska his suit as administrator to foreclose a mortgage. His only right to sue as administrator rested upon his appointment by the probate court of a county in the state of Kansas in which decedent was domiciled at the time of his death. He held that the Kansas administrator might institute suit in the courts of Nebraska before taking out ancillary letters of administration in that state, and upon taking out such letters might by amendment show the fact. In that case he gives forcible reasons for the conclusion reached by him. He says:

"The present plaintiff as administrator of the domicile had a right to receive for final distribution, the sum due on the mortgage. He had an inchoate right to be appointed administrator here, and if any one else had been ap-

pointed, that person would have been liable to account to him for what was in hand after paying the debts in that jurisdiction. * * * The incapacity of the foreign administrator not being radical so as to entirely deprive him of power to proceed with his cause, the fact of his taking out letters in this state was matter which he might aver by amendment and maintain his suit thereon. * * * The impediment to the exercise of the full powers of an administrator in a jurisdiction foreign to that granting his letters is essentially technical and formal and should not be strained beyond its necessary application"—citing Yeaton v. Lynn, 5 Pet. 224, 8 L. Ed. 105.

Judge Shipman in Black v. Allen Co. (C. C.) 42 Fed. 618, 624, 9 L. R. A. 433, after quoting with approval some of Mr. Justice Miller's remarks in Swatzel v. Arnold, supra, says:

"The court early found relief in cases of equity from too strict adherence to technicality upon the ground that 'in equity a plaintiff may file a bill as administrator before he has taken out letters of administration, and it will be sufficient to have them at the hearing, which is not the case at law.' * * * Therefore in Humphreys v. Humphreys, 3 P. Wms. 349, where the next of kin had brought a bill without administering, and the defendant demurred, the Lord Chancellor allowed the demurrer and then permitted the complainants to take out letters of administration, which, when granted, he said, related to the time of the death of the intestate, and to allege the same by way of amendment or by supplemental bill."

In the case of Humphreys v. Humphreys (supra); a bill was filed by an administratrix as such. To this a plea was filed alleging that the taking of administration was subsequent to the filing of the bill.

"The Lord Chancellor [according to the report] with great clearness, and not without some warmth in respect of the delay, overruled the plea, observing that the mere right to have an account of the personal estate was in the plaintiff, * * * as she was the next of kin and it was sufficient that she had now taken out letters of administration, which, when granted, related to the time of the death of the intestate, like the case of an executor before his proving the will, brings a bill, yet his subsequent proving the will makes such bill a good one, though the probate be after the filing thereof."

In 1 Daniell's Chancery Pl. & Pr. p. 318, it is said:

"If an executor, before probate, file a bill, alleging that he has proved the will, such allegation will obviate a demurrer. He must, however, prove the will before the hearing of the cause, and then the probate will be sufficient to support the bill, although it bear date subsequently to the filing of it. In like manner, a plaintiff may file a bill as administrator before he has taken out letters of administration, and it will be sufficient to have them at the hearing."

Chancellor Kent, in Doolittle v. Lewis, 7 Johns. Ch. 45, 11 Am. Dec. 389, in discussing a kindred subject, says:

"If the party sues as executor or administrator, without probate, or taking out letters of administration, the taking them out, at any time before the hearing, will cure the defect, and relate back so as to make the bill good from the beginning. * * * In a light so merely formal is that omission viewed."

Bates, in his work on Federal Equity Procedure (volume 1, § 52), says:

"In equity a plaintiff may file his bill as administrator before he has taken out letters of administration, and it will be sufficient to have the letters at the hearing, which is not the case at law. It is a general rule in equity pleading and procedure that facts which have occurred after the filing of the bill must be brought before the court by supplemental bill and not by way

of amendment; but, as an exception to that rule, an executor or administrator appointed in one state may sue as such in another state and subsequently take out letters testamentary or of administration in the latter state, and set up that fact by way of amendment."

In the case of Hodges v. Kimball, 91 Fed. 845, 34 C. C. A. 103, the Circuit Court of Appeals for the Fourth Circuit had before it the same question we are now considering, and after an exhaustive examination and citation of authorities announced the rule in harmony with that already stated, to the effect that domiciliary administrators might institute a suit at law in a foreign state without having first taken out letters of administration, and might afterwards secure letters of administration in that state and by amendment to their original cause of action make the same appear and proceed as if letters had been granted prior to the institution of the suit. The court in its opinion says:

"It was virtually conceded in argument that in an equity suit an amendment showing the subsequent taking out of letters of administration could be made and the suit maintained, but it was strenuously insisted that a different rule existed in the courts of law."

To the same effect is the case of Henry v. Roe and Burnside, 83 Tex. 446, 18 S. W. 806; Hatch v. Proctor, 102 Mass. 351; Goodrich v. Pendleton, 4 Johns. Ch. 549; Osgood v. Franklin, 2 Johns. Ch. 1, 7 Am. Dec. 513.

From the foregoing authorities, and many others cited and referred to in them, we think the rule is well settled in equity practice, however it may be at law, that an executor named in a will may file a bill in his capacity as executor before probate of the will and maintain an action as such executor, provided he secures probate of the will before the hearing of the cause. Learned counsel for appellant have favored us with no authorities sustaining the opposite view; neither have we, in our examination found such. Accordingly we are constrained to hold that the fact that Haworth had not qualified as executor in Nebraska on June 28, 1902, the time he filed his last amended bill (he having so qualified later, on September 20, 1902) is not a defense to the present action. The qualification related back at least to the date of filing the amended bill. The amended bill was filed two days before the statute of limitations would have barred the action. Whether, therefore, the amended bill related back to the commencement of the action, which the authorities already cited indicate, is quite immaterial. The action in any event, was not barred by the statute of limitations.

A point is made in appellants' brief that because complainant failed to take an oath to faithfully discharge his duties as executor he was never qualified as such, and accordingly was not entitled to recover in this action. An examination of the statutes of Nebraska discloses that no such oath is required in that state. Sections 2677 and 2678 of the Compiled Statutes of 1901, alone relate to the qualification of executors. They read as follows:

"Sec. 2677. When a will shall have been duly proved and allowed, the Probate Court shall issue letters testamentary thereon to the person named executor therein if he is legally competent and he shall accept the trust and give bond as required by law.

"Sec. 2678. Every executor, before he shall enter upon the execution of his trust and before letters testamentary shall issue, shall give bond to the judge of probate in such reasonable sum as he may direct, with one or more sufficient sureties with conditions as follows: * * *"

No provision is here or elsewhere in the statutes found for the taking of an oath to faithfully discharge the duties of the office. The matter of qualification is purely statutory. The statutes of Nebraska require the executor to give bond and that is the only act of qualification contemplated by the statutes.

The remaining assignment of error relied on by defendants' counsel relates to the transfer on the back of the note. It is claimed that it is not an indorsement within the meaning of the law merchant and that it did not pass the legal title to subsequent holders free from equities existing between the makers and payee. The facts of the case show that soon after the maturity of the note the makers paid the payee the full amount of the note. This note was payable "to the order of the Dakota Mortgage Loan Corporation," and is conceded to be a negotiable instrument. At the time the makers paid it to that corporation under its new name of Globe Investment Company they necessarily knew the negotiable character of the note and the possibility of its having been negotiated. They nevertheless paid it without requiring the surrender of the note or the mortgage given to secure its payment. In these circumstances the payment was at their own risk. If the money found its way to the owner and holder of the note, if negotiated, it amounted to payment; otherwise not. Weldon v. Tollman, 15 C. C. A. 138, 67 Fed. 986; Swift v. Bank of Washington, 52 C. C. A. 339, 114 Fed. 643.

No legal justification of this payment is attempted in argument or brief by defendants' counsel. Their reliance is upon the proposition, involved in this assignment of error, that the note was not so indorsed as to vest title in the indorsee so as to cut off the equities existing between the makers and payee. The note and mortgage by express stipulation of the parties, is to be construed according to. laws of the state of Nebraska. We must therefore examine the transactions in the light of those laws.

Section 3380, Compiled Statutes of Nebraska of 1901, is as follows:

"All bonds, promissory notes, bills of exchange, foreign and inland, drawn for any sum or sums of money certain, and made payable to any person or order, or to any person or assigns, shall be negotiable by endorsement thereon, so as absolutely to transfer and vest the property thereof in each and every endorsee successively, but nothing in this section shall be construed to make negotiable any such bond, note or bill of exchange, drawn payable to any person or persons alone, and not drawn payable to order, bearer, or assigns: Provided, that all such bonds, promissory notes, and bills of exchange, made payable to bearer shall be transferable by delivery without endorsement thereon. * * *"

From this statute it appears that promissory notes, payable "to any person or order," or "to any person or assigns," are made negotiable by indorsement. This statute impresses us, with a twofold meaning: First, as a modification of the law merchant concerning what is a negotiable instrument. By the law merchant, in order to be nego-

tiable, a note must be payable to the order of some person or to bearer. By the statute of Nebraska negotiability is extended to a note payable to some person or his assigns. And, second, in the event a note be payable as last stated, the assignment may be made by a blank indorsement. In other words, the indorsement of the name of the person to whose assigns the note is payable, on the back of the note, operates to perform the function of the usual written assignment. It is apparent from these considerations that we are now dealing with a subject somewhat different from the accepted inland bill of exchange, or (since the statute of Anne) promissory note known in commerce or by the law merchant; so different, indeed, that the parties to the original transaction out of which the present suit arose saw fit to stipulate for the supposed different, if not greater, advantage found in the application of the laws of the state of Nebraska.

Tested, now, by these laws, as interpreted by the Supreme Court of Nebraska, how does the case stand? It is first strongly urged by counsel for complainant that the guaranty clause on the back of the note is in and of itself an indorsement by which the legal title of the note is divested from the payee and invested in the transferee upon delivery of the note to him. The payee's contract of guaranty as found on the note is perfect of its kind. It acknowledges receipt of the necessary consideration and (referring to the "note" and "interest" as "bond" and "coupons") guaranties the payment of each coupon as it should mature and finally the collection of the bond itself. The fact that the payee reserved the right to repurchase the bond at any time providing for a release from its guaranty in case of refusal to sell the same to it, on demand, in no manner affects its primary obligation to guaranty the payment of the interest and the collection of the principal. It was on a contingency, which, in this case never happened, that the guaranty became subject to defeasance. By this contract the payee for an acknowledged consideration obligated itself absolutely to pay the principal of the note, if payment could not be obtained from the maker by the exercise of due and reasonable care. Such is the accepted definition of a contract of guaranty. Brackett v. Rich. 23 Minn. 485, 23 Am. Rep. 703, and cases cited. This contract is more comprehensive and unconditional than the contract of indorsement. By the latter the failure to present a note to a maker at its maturity and to demand payment thereof and notify the indorser of nonpayment are essential and necessary conditions to the creation of any liability against him by reason of his indorsement.

But we need not dwell on these elementary thoughts. The Supreme Court of Nebraska has frequently considered this question and pronounced upon it in no uncertain voice. Heard v. Dubuque County Bank, 8 Neb. 10, 30 Am. Rep. 811, was a suit upon a promissory note payable to the order of V. J. Williams & Co., and indorsed only as follows:

"For value received I hereby guarantee payment of the within note and waive presentation, protest, and notice. [Signed] V. P. Williams & Co."

The suit was in favor of the transferee of the note. Defendant's counsel contended that the note never was, in fact negotiated because

the guaranty written upon the back did not amount to an endorsement so as to transfer title. The court, speaking on this point, says as follows:

"We find some conflict of authorities, but we adopt the law and the language of Day, C. J., in Robinson v. Lair, 31 Iowa, 9: 'We confess ourselves unable to give effect to the contract of guaranty of payment and waiver of demand and notice, if the payees still intend to retain the title. The writing simply constitutes an indorsement with an enlarged liability' "—citing many cases.

State National Bank v. Haylen, 14 Neb. 480, 16 N. W. 754, was an action for the foreclosure of a mortgage given to secure a negotiable promissory note signed by defendants, payable to the order of Thomas P. Kennard, and by him indorsed as follows:

"Collection guaranteed and notice of protest waived this 26th day of April, 1880. [Signed]   Thomas P. Kennard."

Defendants set up as their defense usury, fraud, etc., practiced upon them by the original payee. Plaintiff replies, alleging purchase in good faith, before maturity, for value and without notice of any equity. The court, in disposing of the case, uses the following language:

"There is no question made in the evidence of the plaintiff bank being the bona fide owner and holder of the note and mortgage, nor that it received the same before maturity in the ordinary course of business and without notice of any infirmity. * * * But the district court let in the defense of usury for the reason, as is stated in the judgment, 'it [the plaintiff] holds the note as assignee, and not as indorsee.' * * * This is exactly the form of indorsement which in Heard v. Dubuque County Bank, 8 Neb. 10, we held, following Robinson v. Lair, 31 Iowa, 9, to constitute an indorsement with an enlarged liability. * * * It will be admitted that the possession of the note, with the payee's name written across the back, is evidence of ownership in the plaintiff. Yet it is claimed that while this would be the case if the payee's name stood alone on the back of the note, that here there are other words over the payee's signature to which it applies and upon which it has spent its force. Let us admit this, and then see whether the words taken together, including the signature, do not furnish still stronger evidence of a transfer of title in the note from the payee to the holder. By virtue of these words the payee agrees that he will pay the note in case of the holders using due diligence and being unable to collect it from the makers. He furthermore agrees that his ultimate liability to pay the note shall not be affected by reason of the neglect or failure of the holder to present it to the maker at maturity for payment, or to notify him, the payee, in case of its nonpayment. Now what meaning could any of these words have except upon the proposition understood that the payee had disposed of the note, and parted with the title to it to some other person, to whom he guaranteed the payment and in whose favor he waived the duty of presentation and notice? * * * I therefore see no reason for departing from the doctrine of Heard v. Dubuque County Bank, and it will be adhered to. The note and mortgage having been indorsed and delivered to the plaintiff before maturity and received by it for value in the ordinary course of business, without notice of any infirmity, it holds the same free from the taint of usury."

Weitz v. Wolfe, 28 Neb. 500, 44 N. W. 485, was a suit to recover the amount due on a promissory note made by one Jennings, and payable to the order of Weitz. Before maturity Weitz sold and transferred the note to Wolfe, making only the following endorsement upon the same:

"I guarantee the payment of within note, waiving demand and protest.
[Signed] T. T. Weitz."

Jennings and Weitz were both made defendants. The court says:

"The indorsement in this case being signed by the payee, operated as a
transfer of the note. * * * The liability of Weitz was not lessened be-
cause the indorsement contained the word 'guarantee.' He is an indorser and
was properly sued with the maker in the same action."

Buck v. Savings Bank, 29 Neb. 407, 45 N. W. 776, 26 Am. St. Rep.
392, was a suit in replevin for cattle mortgaged to secure the payment
of a note payable to the order of one Mowry. He sold the note,
placing on the back thereof, the following words only:

"Demand, notice, and protest waived, and payment guaranteed. [Signed]
Welcome Mowry."

The court says two questions are presented by record: First, is the
writing on the back of the note an indorsement or merely a guar-
anty?

In Heard v. Dubuque County Bank, 8 Neb. 10, the writing on the
back of the note was as follows:

"For value received I hereby guarantee payment of the within note, and
waive presentation, protest, and notice."

This was held to be an indorsement with an enlarged liability. State
National Bank v. Haylen, 14 Neb. 480, 16 N. W. 754. The writing
on the back of the note in question, therefore, was a valid indorse-
ment with an enlarged liability. To the same effect, also, is the case
of Pollard v. Huff, 44 Neb. 892, 63 N. W. 58.

From the foregoing it appears that under the laws of Nebraska,
as interpreted by its highest judicial tribunal, the guaranty written
on the back of the note before maturity and at the time of its sale
to John Stuart & Co. constitutes in and of itself a transfer of the
legal title, equivalent to a blank indorsement, such a transfer as en-
titles the transferee or subsequent holder to maintain an action for its
collection free from equities existing between the makers and payee.
Possibly we might here appropriately end our consideration of this
case, but as we find in the assignment, so called, written on the back
of the note a very satisfactory solution of the question before us
we proceed to its consideration.

It is conceded, of course, that the mere indorsement of the name
of a payee on the back of a negotiable note, commonly called a "blank
indorsement," evidences a complete transfer of title, one recognized
by the law merchant, and certainly good under the laws of Nebraska.
Daniel on Negotiable Instruments, vol. 1, § 688c, says:

"The mere signature of the payee indorsed on the paper expresses an
executed contract of assignment with its implications, and also an executory
contract of conditional liability with its implications. The assignment would
be as complete by the mere signature, as with the words of assignment writ-
ten over it."

By this standard let us test the so-called assignment. It reads as
follows:

"For value received the Dakota Mortgage Loan Corporation hereby assigns
and transfers the within note and coupons, *together with all its right, title*

*and interest under the real estate mortgage securing the same, without re-course, to* ———. [Signed] The Dakota Mortgage Loan Corporation, by Al-lison Z. Mason, Treasurer."

Eliminating the words italicized, which relate to the transfer of the mortgage security and which were doubtless employed ex in-dustria to expressly do what the law by necessary implication does, there remains the bare statement that the payee of the note, for value received, assigns and transfers it to ———. This statement contains all the elements of a blank endorsement. It is merely the writing out of the implications of such indorsement, it is written on the back of the note; it acknowledges the receipt of a consideration; it employs apt words to transfer the full and complete title to the note, and ac-tually purports to make such transfer. Any one receiving it with such a transfer in blank may treat it as a blank indorsement and transfer it by delivery or may so fill it up as to make it a special indorsement. Evans v. Gee, 11 Pet. 80, 9 L. Ed. 639; Lovell v. Evertson, 11 Johns. 52; Everett v. Tidball, 34 Neb. 803, 52 N. W. 816.

In the case of Maine Trust & Banking Co. v. Butler, 45 Minn. 506, 48 N. W. 333, 12 L. R. A. 370, the Supreme Court of Minnesota, considering a question similar to that now before us, makes use of the following language:

"It would seem obvious that, when writing out upon the back of the paper just what would have been inferred from his signature, the indorser has in-curred no greater liability—has done no more than he would, had he placed his signature there. How can it be said then that he has done less, in the absence of that clear declaration of his intent to exempt himself mentioned in all of the authorities as necessary in the case of a qualified indorsement?"

There is abundant authority for the effect which we give to the indorsement in question. In Markey v. Corey, 108 Mich. 184, 66 N. W. 493, 36 L. R. A. 117, 62 Am. St. Rep. 698, the court, after reviewing and citing many sustaining authorities, held that the following indorse-ment on the back of a note, namely: "I hereby assign the within note to Matthew M. Markey and Catherine Sunders"—was a good commercial indorsement, subjecting the payee who signed the same to the liability of indorser under the law merchant. In Adams v. Blethen, 66 Me. 19, 22 Am. Rep. 547, it is held that a defendant, the payee of a negotiable note who signed his name on the back of the note under these words, "I this day sold and delivered to Catharine M. Adams the *with not*," thereby assumed all the liabilities of an endorser. The court there says:

"The defendant declares that he sold and delivered the note. Every in-dorser of a bill or note impliedly says the same thing by his indorsement. The defendant did sell and deliver the note, and by making that declaration over his name on the back of it, he also agreed to pay the note to the plaintiff according to its tenor, upon seasonable notice, if the maker did not pay it."

In Davidson v. Powell, 114 N. C. 575, 19 S. E. 601, it was held that the indorsement of a negotiable note in these words, "I assign over the within note to S. M. Powell," does not limit the indorser's liability. In Sears v. Lantz, 47 Iowa, 658, it is held that where the payee of a note wrote on the back thereof the following words: "I hereby as-sign all my right and title to Louis Meckley," and signed his name

thereto, he thereby subjected himself to all the liabilities of an indorser. In Merrill v. Hurley, 6 S. D. 593, 62 N. W. 958, 55 Am. St. Rep. 859, it is held that when the president of a corporation to which negotiable interest bearing bonds are payable, places upon the back thereof the words, "For value received I hereby assign the within bond, together with all our interest in and all our right under the mortgage securing the same to Mary E. Merrill without recourse," and signs the same as such president, the same constitutes a contract of indorsement and is not a mere assignment of the instrument. Bisbing v. Graham, 14 Pa. 14, 53 Am. Dec. 510, was a suit on a note by the endorsee against the maker. The note was payable to the order of David Paynter. He indorsed it as follows: "For value received I assign to William Graham, or order, all my right, title and interest in the within note, without recourse"—and signed his name thereto. The court held this to be an indorsement, protecting the indorsee from equities existing between the maker and payee, making use of these words:

"Nor is the fact that the transfer of the note assumes the form of an ordinary assignment, such a departure from the usual course of business as to put the indorsee on his guard against the indorser. Although a blank indorsement in our commercial towns is the usual mode, yet in the country it is so frequently otherwise that it seldom, if ever, provokes inquiry or observation."

In the light thrown upon this so-called assignment by the authorities cited we are unable to treat it merely as an assignment of a chose in action, subjecting the assignee to such defenses as might be made against the assignor. In our opinion it is, in all essential respects, the equivalent of a blank indorsement, and relieves an innocent holder from equities existing between the makers and payee. This, we think, would be true under a proper application of the principles of the law merchant; but we are especially satisfied of it in view of the provisions of the statute of Nebraska. By that statute a note, whether payable to a person or his assigns, or to a person or his order, is equally negotiable. Whether payable one way or the other, the statute, treating them practically alike, for the purpose, doubtless, of facilitating the transaction of business, sanctions the transfer of title by mere endorsement. If the note is payable to a person or assigns, an assignment by the payee using the words employed in this case, "hereby assigns and transfers," would be the technically correct method of transferring the legal title of such a note. Again, treating them in pari materia, the technical assignment, like that above indicated, when containing no words of a restrictive or conditional character from which an intent not to transfer the legal title could be reasonably drawn, should transfer the legal title as effectually as the mere endorsement. The statute discloses a general policy in the state of Nebraska, and from it we are at liberty to draw all reasonable deductions.

The decree below was for the right party and is accordingly affirmed.